1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

COURTNEY JAMES STAHL,

9                                        Petitioner,          Case No. C20-486-TSZ-MAT

10          v.                                                REPORT AND RECOMMENDATION

11   RON HAYNES,

12                                        Respondent.

13

14          Petitioner, a state prisoner who is currently confined at Stafford Creek Corrections Center

15   in Aberdeen, Washington, seeks relief under 28 U.S.C. § 2254 from a 2016 King County Superior

16   Court judgment and sentence. Dkt. 4. Respondent has filed an answer to petitioner's habeas

17   petition and submitted relevant portions of the state court record. Dkts. 9, 10. Petitioner has filed

18   a response to respondent's answer. Dkts. 24, 25.

19          Having considered the parties' submissions, the balance of the record, and the governing

20   law, the Court recommends that the federal habeas petition (Dkt. 4) be DENIED without an

21   evidentiary hearing. The Court also recommends that a certificate of appealability be DENIED.

22

23

REPORT AND RECOMMENDATION - 1

1

## I.    FACTUAL AND PROCEDURAL HISTORY

2      The Washington State Court of Appeals ("Court of Appeals"), on direct appeal,

3  summarized the facts relevant to petitioner's conviction as follows:

4           Cortney Stahl resided in a greenbelt where a number of homeless people resided.
5   On July 9, 2015, camp resident Jose Leon left the greenbelt briefly for roughly 30 to 40
    minutes. When he returned, Leon observed his friend, Alicia Nickerson, shaking and
    crying. Nickerson told Leon that Stahl had been "manhandling her" and grabbing her
6   throat.
           Leon confronted Stahl about Nickerson's accusations. Stahl then hit both Leon and
7   Nickerson. After Leon asked him to stop, Stahl then appeared to calm down and left the
    scene.
8           But, Stahl returned 20 to 30 minutes later and was more aggressive. He began using
    a piece of wood, similar to a two by four, to destroy Leon's shelter. He then began beating
9   both Leon and Nickerson with the wood. Police arrived at the scene.
           Police were informed about a separate incident involving Stahl and another
10  resident, J.S. J.S. knew Stahl, and had received heroin from Stahl the day before. J.S.
    testified that she had woken up when Stahl attempted to put his penis in her mouth. She
    tried to get up, but Stahl grabbed her and held her down as he masturbated.
11          Another camp resident, N.W. reported an incident involving Stahl to the police.
12  N.W. testified that Stahl had become angry with her, and threw a thermos and juice at her
    while the two were in a tent. As N.W. tried to crawl away from Stahl, he grabbed her
    between her legs by her vagina. N.W. testified that it felt like Stahl was trying to insert his
13  fingers into her vagina. N.W. was able to get away.
           The State charged Stahl with five crimes: indecent liberties and rape in the second
14  degree for his acts against J.S., assault in the third degree for his acts against Leon, assault
    in the fourth degree for his acts against Nickerson, and indecent liberties for his acts against
15  N.W. The jury found Stahl guilty on all counts, but the indecent liberties conviction
    involving J.S. was vacated for double jeopardy reasons.

16  Dkt. 10, Ex. 21, at 1-2; *State v. Stahl*, 199 Wash. App. 1014 (2017).

17      Petitioner appealed his convictions to the Court of Appeals filing both an opening brief

18  through appellate counsel as well as a pro se statement of additional grounds. Dkt. 10, Exs. 18, 19.

19  On June 5, 2017, the Court of Appeals affirmed the conviction. Dkt. 10, Ex. 21. Petitioner filed a

20  petition for review through appellate counsel with the Washington Supreme Court ("Supreme

21  Court"). Dkt. 10, Ex. 22. On November 8, 2017, the Supreme Court denied review without

22  comment. Dkt. 10, Ex. 23. The Court of Appeals issued its mandate on January 12, 2018. Dkt. 10,

23  Ex. 24.

REPORT AND RECOMMENDATION - 2

On September 6, 2018, petitioner filed a pro se personal restraint petition (PRP) with the Court of Appeals. Dkt. 10, Exs. 25, 26. On March 22, 2019, the Court of Appeals dismissed the PRP. Dkt. 10, Ex. 29. Petitioner sought discretionary review in the Supreme Court. Dkt. 10, Ex. 30. The Commissioner of the Supreme Court denied review. Dkt. 10, Ex. 31. Petitioner filed a motion to modify the Commissioner's ruling. Dkt. 10, Ex. 32. The Supreme Court denied the motion to modify without comment. Dkt. 10, Ex. 33. The Court of Appeals issued a certificate of finality on February 28, 2020. Dkt. 10, Ex. 34. Petitioner timely filed this federal habeas petition on March 30, 2020. Dkts. 1, 4.

## II.    GROUNDS FOR RELIEF

Petitioner identifies twelve grounds for habeas relief which are summarized as follows:

1. Petitioner was denied his right to a unanimous jury verdict on the fourth-degree assault charge (count 4).

2. Petitioner was denied a fair trial as to counts 1 and 5, due to prosecutorial misconduct during closing argument.

3. Defense counsel provided ineffective assistance of counsel at trial by failing to object to the prosecutor's misconduct during closing argument.

4. Petitioner's constitutional and statutory right to a speedy trial were violated.

5. The admission of "testimonial out-of-court statements and photograph evidence against him to prosecute him at trial, for assault on count 4, without the alleged victim testifying and being subject to cross-examination at trial violated petitioner's right to confrontation and a fair trial [.]"

6. The trial court erred in denying petitioner's request for substitution of new counsel without conducting an adequate inquiry.

REPORT AND RECOMMENDATION - 3

7. The trial court denied petitioner his right to counsel for purposes of a new trial motion and sentencing hearing.

8. The joinder of all five counts for trial unduly prejudiced petitioner and denied him his right to a fair trial.

9. The trial court erred in failing to dismiss juror 18 for misconduct violating petitioner's right to an impartial jury.

10. The prosecutor failed to disclose evidence that the complaining witness for count 1 had a felony conviction for theft of a motor vehicle and failed to disclose the "true identity" of the complaining witness for count 3. Petitioner claims the prosecutor's actions violated *Brady v. Maryland*[1] and petitioner's right to a fair trial.

11. Petitioner was "constructively denied" counsel "through denial of his right to present a defense at trial" and trial counsel provided ineffective assistance at trial by: failing to object on Confrontation Clause grounds to testimonial statements and photographs of unavailable witness on count 4; failing to "declare[] a mistrial"; failing to argue severance of count 5 from count 1 at trial; failing to impeach a witness on count 1 based on her criminal history; failing to impeach a witness on count 3 for giving a false identity and failing to investigate that witness's true name and criminal background; failing to propose a jury instruction on self-defense; failing to raise or present lesser included or alternative offense jury instructions options for counts 1, 2 and 5 or all counts; failing to investigate, interview, or call important material fact witnesses to trial including the paramedic who examined

---

[1] *Brady v. Maryland*, 373 U.S. 83, 867 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.").

REPORT AND RECOMMENDATION - 4

petitioner, and the sergeant who documented petitioner's injuries in his police report.

12. Appellate counsel provided ineffective assistance by failing to raise Grounds 5-11 above as assignments of error on direct appeal.

Dkts. 4, 4-2.

## III.  DISCUSSION

Respondent argues that petitioner failed to properly exhaust Grounds 1, 4, 10, 11, and 12, in the state courts and that those claims are now procedurally defaulted and cannot be presented in federal court. Dkt. 9. Respondent concedes that petitioner properly exhausted Grounds 2, 3, 5, 6, 7, 8, and 9, but argues that those claims should be denied on the merits. *Id.* Petitioner argues that all of his claims were properly exhausted and that the state courts' errors entitle him to relief. Dkts. 4, 23, 24. As discussed below, the Court concludes petitioner failed to properly exhaust Grounds 1, 4, 10, 11, and 12. These grounds are procedurally defaulted and should be denied. The Court further concludes that petitioner properly exhausted Grounds 2, 3, 5, 6, 7, 8, and 9, but that those claims should be denied on the merits. Likewise, petitioner's request for an evidentiary hearing should be denied.

A.    Exhaustion

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

REPORT AND RECOMMENDATION - 5

1       There are two avenues by which a petitioner may satisfy the exhaustion requirement. First,

2 a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in each

3 appropriate state court, including the state supreme court with powers of discretionary review,

4 thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541 U.S. 27, 29

5 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "It has to be clear from the petition filed

6 at each level in the state court system that the petitioner is claiming the violation of the federal

7 constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan v.*

8 *Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

9       Second, a petitioner may technically exhaust his state remedies by demonstrating that his

10 "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 162-

11 63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*, 510

12 F.3d 1127, 1139 (9th Cir. 2007) (en banc).  If the petitioner is procedurally barred from presenting

13 his federal claims to the appropriate state court at the time of filing his federal habeas petition, the

14 claims are deemed to be procedurally defaulted for purposes of federal habeas review. *O'Sullivan*

15 *v. Boerckel*, 526 U.S. 838, 848 (1999). A habeas petitioner who has defaulted his federal claims in

16 state court meets the technical requirements for exhaustion because "there are no state remedies

17 any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (2007). Federal habeas

18 review of procedurally defaulted claims is barred unless the petitioner can either demonstrate cause

19 for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

20 that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id.* at 724.

21     1.    *Proper Exhaustion*

22        a.    *Ground 1: Unanimous Jury Verdict*

23

1    Petitioner alleges he was denied his right to a unanimous jury verdict on the fourth-degree

2    assault charge (count 4). Dkt. 4, at 5; Dkts. 15-17. Petitioner raised this claim to the Court of

3    Appeals on direct appeal in appellate counsel's brief but did not raise it in his petition for review

4    to the Supreme Court. *See* Exs. 18, 22. This claim was also not included in his personal restraint

5    petition (PRP) and motion for discretionary review. *See* Exs. 25, 26, 30. Because the Supreme

6    Court did not have the opportunity to rule on this claim, it is not properly exhausted.

7                      b.    *Ground 4: Speedy Trial*

8    Petitioner alleges he was denied his right to a speedy trial. Dkt. 4, at 10. Petitioner raised

9    this claim to the Court of Appeals on direct appeal in his pro se statement of additional grounds

10   but did not raise it in his petition for review to the Supreme Court. *See* Exs. 19, 22. This claim was

11   also not included in his personal restraint petition (PRP) and motion for discretionary review. *See*

12   Exs. 25, 26, 30. Because the Supreme Court did not have the opportunity to rule on this claim, it

13   is not properly exhausted.

14                     c.    *Ground 10: Withholding Evidence*

15   Petitioner alleges the prosecutor failed to disclose evidence that the complaining witness

16   for count 1 had a felony conviction for theft of a motor vehicle and failed to disclose the true

17   identity of the complaining witness for count 3. Dkt. 4-2, at 13. Petitioner did not raise this claim

18   on direct appeal. *See* Dkt. 10, Exs. 18, 19, 22. Petitioner raised this claim in his personal restraint

19   petition (PRP) but did not raise it in his motion for discretionary review in the Supreme Court. *See*

20   Dkt. 10, Exs. 25, 26, 30. After the Supreme Court denied review, petitioner attempted to raise this

21   claim again in his motion to modify the commissioner's ruling. Dkt. 10, Ex. 32.

22   But presentation of a claim to the Supreme Court for the first time in a motion to modify

23   does not constitute fair presentation of the claim for exhaustion purposes because the court has no

opportunity to consider the merits of the claim in that procedural context. *See Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (presenting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation of the claim for exhaustion purposes) (citing *Castille*, 489 U.S. at 351); *and see Densmore v. Glebe*, No. C15-572-MJP-JPD, 2016 WL 3636907, at *5 (W.D. Wash. Mar. 29, 2016), *report and recommendation adopted*, No. C15-572-MJP-JPD, 2016 WL 3551827 (W.D. Wash. June 30, 2016). Motions for discretionary review are determined initially by the Commissioner. *See* Wash. RAP 17.2(a). A litigant may object to the ruling of the Commissioner by filing a motion to modify the ruling directed to the Supreme Court judges. *See* Wash. RAP 17.7. Thus, where a litigant fails to present a claim in a motion for discretionary review, he deprives the Commissioner of an opportunity to rule on the claim in the first instance and thereby also deprives himself of the opportunity to object as there is no ruling upon which to base an objection. *See Densmore*, No. C15-572-MJP-JPD, 2016 WL 3636907, at *5.

Because petitioner did not fairly present this claim to the Supreme Court, it is not properly exhausted.

        d.    *Ground 11: Constructive Denial of Trial Counsel/Ineffective Assistance of Trial Counsel*

Petitioner alleges that he was "constructively denied" counsel "through denial of his right to present a defense at trial" and that trial counsel provided ineffective assistance at trial by: failing to object on Confrontation Clause grounds to testimonial statements and photographs of unavailable witness on count 4; failing to "declare[] a mistrial"; failing to argue severance of count 5 from count 1 at trial; failing to impeach a witness on count 1 based on her criminal history; failing to impeach a witness on count 3 for giving a false identity and failing to investigate that

1    witness's true name and criminal background; failing to propose a jury instruction on self-defense;

2    failing to raise or present lesser included or alternative offense jury instructions options for counts

3    1, 2 and 5 or all counts; failing to investigate, interview, or call important material fact witnesses

4    to trial including the paramedic who examined petitioner, and the sergeant who documented

5    petitioner's injuries in his police report.[23] Dkt. 4-2, at 14-15.

6          Petitioner did not raise this claim on direct appeal. *See* Dkt. 10, Exs. 18, 19, 22. Petitioner

7    raised this claim in his personal restraint petition (PRP) but did not raise it in his motion for

8    discretionary review in the Supreme Court. *See* Dkt. 10, Exs. 25, 26, 30. After the Supreme Court

9    denied review, petitioner attempted to raise this ground again in his motion to modify the

10   commissioner's ruling. Dkt. 10, Ex. 32. But, as noted above, presentation of a claim to the Supreme

11   Court for the first time in a motion to modify does not constitute fair presentation of the claim for

12   exhaustion purposes. *See Roettgen*, 33 F.3d at 38.

13         Because petitioner did not fairly present this claim to the Supreme Court, it is not properly

14   exhausted.

15         e.    *Ground 12: Ineffective Assistance of Appellate Counsel*

16         Petitioner alleges that appellate counsel provided ineffective assistance by failing to raise

17   Grounds 5-11 as assignments of error on direct appeal. Petitioner did not raise this claim on direct

18   appeal. *See* Dkt. 10, Exs. 18, 19, 22. Petitioner raised this claim in his personal restraint petition

19   (PRP) but did not raise it in his motion for discretionary review in the Supreme Court. *See* Dkt.

20   10, Exs. 25, 26, 30. After the Supreme Court denied review, petitioner attempted to raise this

21

22     [2] The Court notes that petitioner's other claim of ineffective assistance of trial counsel (Ground 3) based on trial counsel failure to object to the prosecutor's closing argument, was properly exhausted and is not procedurally barred.

23     [3] The Court notes that petitioner also attempts to raise some of these ineffective assistance arguments in the context of his Confrontation Clause claim. But these specific ineffective assistance claims were never fairly presented to the Supreme Court in any context.

REPORT AND RECOMMENDATION - 9

1    ground again in his motion to modify the commissioner's ruling. Dkt. 10, Ex. 32. But, as noted

2    above, presentation of a claim to the Supreme Court for the first time in a motion to modify does

3    not constitute fair presentation of the claim for exhaustion purposes. *See Roettgen*, 33 F.3d at 38.

4        Because petitioner did not fairly present this claim to the Washington Supreme Court, it is

5    not properly exhausted.

6            f.      *Remaining Grounds (2, 3, 5, 6, 7, 8, 9)*

7        Respondent concedes petitioner properly exhausted his remaining claims (2, 3, 5, 6, 7, 8,

8    9). Dkt. 9. Grounds 2 and 3 were raised on direct appeal and presented to the Supreme Court in

9    appellate counsel's petition for review. Dkt. 10, Exs. 18, 19, 22. Grounds 5, 6, 7, 8, and 9, were

10   raised in the personal restraint proceeding and presented to the Supreme Court in petitioner's pro

11   se motion for discretionary review. Dkt. 10, Exs. 25, 26, 30.

12       Accordingly, those claims will be addressed on the merits below.

13       2.      *Technical Exhaustion*

14       As discussed above, petitioner did not properly exhaust Grounds 1, 4, 10, 11, and 12.  As

15   respondent maintains, these claims are technically exhausted because if petitioner attempted to

16   raise them in a second personal restraint petition, the state courts would find them barred by

17   Washington law. Dkt. 9. Under RCW 10.73.090(1), a petition for collateral attack on a judgment

18   and sentence in a criminal case must be filed within one year after the judgment becomes final,

19   subject to exceptions that do not apply here. *See* RCW 10.73.100. A judgment becomes final for

20   purposes of state collateral review on the date that the appellate court issues its mandate disposing

21   of a timely direct appeal. RCW 10.73.090(3)(b). Here, the state court issued its mandate well over

22   one year ago. *See* Dkt. 10, Ex. 24. It therefore appears clear that petitioner would now be time

23   barred from returning to the state courts to present his unexhausted claims.  *See* RCW 10.73.090.

Moreover, because petitioner has previously presented a personal restraint petition to the state courts, the state courts are unlikely to entertain another such petition. *See* RCW 10.73.140 (successive petition bar). Accordingly, the Court concludes that petitioner has technically exhausted, and procedurally defaulted, Grounds 1, 4, 10, 11, and 12.

        3.    *Cause and Prejudice*

Federal habeas review of petitioner's procedurally defaulted claims is barred unless he can demonstrate cause and prejudice, or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id.* at 753. A petitioner can demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the unavailability of a factual or legal basis for a claim, or some interference by officials. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But an ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted, and, unless the state prisoner satisfies the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim. *Edwards v. Carpenter*, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).

To show "prejudice," petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original). And only in a "truly extraordinary case," the Court may grant habeas relief without a showing of cause or prejudice to correct a

1    "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction

2    of a defendant who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

3           In *Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309 (2012), the Supreme Court established a

4    limited exception to the general rule that a federal court cannot grant a habeas petition that has

5    been procedurally defaulted in state court. *See Coleman*, 501 U.S. at 729–30. Specifically, in

6    *Martinez*, the Supreme Court held that inadequate assistance of postconviction review counsel or

7    lack of counsel "at initial-review collateral proceedings may establish cause for a prisoner's

8    procedural default of a claim of ineffective assistance *at trial*." *Martinez*, 132 at 1315 (emphasis

9    added). To establish cause under *Martinez*, the petitioner must show that "(1) the underlying

10   ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented

11   or had ineffective counsel during the [post-conviction relief ('PCR') ] proceeding; (3) the state

12   PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a

13   practical matter) the petitioner to bring the claim in the initial review collateral proceeding."

14   *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc) (citing *Trevino v. Thaler*, 569 U.S.

15   413, 422, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013)). However, *Martinez* made clear that

16   this exception applies only to the "initial-review" collateral proceedings and does not apply to

17   "attorney errors in other kinds of proceedings, including appeals from initial-review collateral

18   proceedings, second or successive collateral proceedings, and petitions for discretionary review in

19   a State's appellate courts." *Martinez*, 132 at 1320. Further, *Martinez* only applies to claims alleging

20   ineffective assistance of *trial* counsel. *Martinez*, 132 at 1315.

21          Here, there is no dispute that petitioner raised his Ground 10 ineffective assistance of trial

22   counsel claim in his initial personal restraint petition to the Court of Appeals. However, after his

23   PRP was dismissed initially by the Court of Appeals, petitioner did not raise this claim again in

his motion for discretionary review to the Supreme Court. Because the *Martinez* exception only applies to the initial review collateral proceedings, it does not excuse petitioner's default in failing to raise the ineffective assistance claim in his motion for discretionary review to the Supreme Court. *See Senior v. Glebe,* No. C15-952 JCC-BAT, 2016 WL 5107047, at *4 (W.D. Wash. July 22, 2016), *report and recommendation adopted sub nom. Senior v. Gilbert*, No. C15-0952-JCC-BAT, 2016 WL 4992677 (W.D. Wash. Sept. 19, 2016), *aff'd*, 720 F. App'x 882 (9th Cir. 2018) (finding *Martinez* did not apply to excuse petitioner's default where pro se petitioner raised ineffective assistance claim in initial personal restraint petition but failed to raise it in his motion for discretionary review to the Supreme Court). Likewise, the Supreme Court has declined to extend the *Martinez* exception to claims of ineffective assistance of appellate counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2067, 198 L. Ed. 2d 603 (2017) (declining to expand the *Martinez* exception to the distinct context of ineffective assistance of appellate counsel). As such, the *Martinez* exception also does not apply to excuse petitioner's procedural default with respect to Ground 12 (ineffective assistance of appellate counsel).

Here, petitioner fails to demonstrate that any factor external to the defense prevented him from complying with the state's procedural rules with respect to any of his procedurally defaulted claims, and, thus, he has not demonstrated cause for his procedural default. As discussed above, the *Martinez* exception does not apply to excuse petitioner's procedural default of his ineffective assistance of counsel claims. Because petitioner has not met his burden of demonstrating cause for his procedural default with respect to any of his procedurally defaulted claims, the Court need not determine whether there was any actual prejudice. *See Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, petitioner makes no colorable showing of actual innocence. Petitioner thus fails to demonstrate that his

1    procedurally defaulted claims are eligible for federal habeas review and Grounds 1, 4, 10, 11, and

2    12 should be DENIED.

3    B.    Merits review

4          Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

5    petition may be granted with respect to any claim adjudicated on the merits in state court only if

6    (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly

7    established federal law, as determined by the Supreme Court, or (2) the decision was based on an

8    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

9    In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court

10   that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v.*

11   *Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th

12   Cir. 2013). "When more than one state court has adjudicated a claim, [the Court analyzes] the last

13   reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v.*

14   *Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

15         Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition

16   only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

17   question of law, or if the state court decides a case differently than the Supreme Court has on a set

18   of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under

19   the "unreasonable application" clause, a federal habeas court may grant the writ only if the state

20   court identifies the correct governing legal principle from the Supreme Court's decisions, but

21   unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The

22   Supreme Court has made clear that a state court's decision may be overturned only if the

23   application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

1    Supreme Court has further explained that "[a] state court's determination that a claim lacks merit

2    precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

3    the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough*

4    *v. Alvarado*, 541 U.S. 652, 664 (2004)).

5        Clearly established federal law, for purposes of AEDPA, means "the governing legal

6    principle or principles set forth by the Supreme Court at the time the state court render[ed] its

7    decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta.

8    *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the legal

9    issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or

10   an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955

11   (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

12       With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state

13   court's conclusion was based on "an unreasonable determination of the facts in light of the

14   evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

15   (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A]

16   decision adjudicated on the merits in a state court and based on a factual determination will not be

17   overturned on factual grounds unless objectively unreasonable in light of the evidence presented

18   in the state-court proceedings."). The Court presumes the state court's factual findings to be sound

19   unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence."

20   *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

21       With these standards in mind, the Court turns to petitioner's remaining claims.

22       1.    *Ground 2: Prosecutorial Misconduct During Closing Argument*

23

1        Petitioner claims the prosecutor committed misconduct during his closing argument. Dkt.

2    4, at 7. Specifically, he argues that, during the prosecutor's rebuttal remarks, he "misrepresented

3    the defense argument, [and] in the process, improperly appealed to jurors' sympathies and

4    prejudices." *Id.* Petitioner also asserts the prosecutor "improperly vouch[ed] for the honesty of the

5    complaining witnesses." *Id.*

6        When a prosecutor's conduct is placed in question, unless the conduct impermissibly

7    infringes on a specific constitutional right, the standard of review is the "narrow one of due process,

8    and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181-82

9    (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974). To obtain relief on a claim of

10   prosecutorial misconduct, a federal habeas petitioner must do more than show that "the

11   prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 180-

12   81. A petitioner must demonstrate that the allegedly improper comments made by the prosecutor

13   "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

14   *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643); *see also Parker v. Matthews*, 567

15   U.S. 37, 45, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam) (holding that *Darden* provides

16   relevant clearly established law on habeas review of claims that statements by prosecutors

17   amounted to prosecutorial misconduct).

18       In determining if a petitioner's due process rights were violated, the court "must consider

19   the probable effect [of] the prosecutor's [statements] ... on the jury's ability to judge the evidence

20   fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). In order to make this assessment, it is

21   necessary to examine the entire proceedings and place the prosecutor's remarks in context. *See*

22   *Greer v. Miller*, 483 U.S. 756, 765-66 (1987). In determining whether due process was violated,

23   courts look to various

> *Darden* factors—i.e., the weight of the evidence, the prominence of the comment
> in the context of the entire trial, whether the prosecution misstated the evidence,
> whether the judge instructed the jury to disregard the comment, whether the
> comment was invited by defense counsel in its summation and whether defense
> counsel had an adequate opportunity to rebut the comment.

*Hein v. Sullivan*, 601 F.3d 897, 914 (9th Cir. 2010); *Floyd v. Filson*, 949 F.3d 1128, 1149–50 (9th Cir. 2020), *cert. denied sub nom. Floyd v. Gittere*, No. 19-8921, 2020 WL 6385791 (U.S. Nov. 2, 2020). Courts also have substantial latitude when considering prosecutorial misconduct claims because "constitutional line drawing [in such cases] is necessarily imprecise." *Donnelly*, 416 U.S. at 645; *Parker*, 567 U.S. at 48 (the "*Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations'") (quoting *Yarborough*, 541 U.S. at 664).

Further, prosecutorial misconduct which rises to the level of a constitutional violation provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the test announced by the Supreme Court in *Brecht*. *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004). Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

a.    "Mischaracterization" and "Appeal to Jurors' Sympathies"

Petitioner argues he was denied his right to a fair trial because the state misrepresented the defense argument in its rebuttal and in the process improperly appealed to the jurors' sympathies.

The record shows that in his closing argument defense counsel commented several times on the lifestyle of the victims in the case, including their homelessness and heroin addiction, implying that these factors undermined their credibility. With respect to J.S., defense counsel stated:

REPORT AND RECOMMENDATION - 17

1
2
3
4
5

> Where does she get the money to buy [heroin]? She has – well, it just comes. People feed her. They give her heroin. Her parents sometimes give her a couple bucks. But she doesn't really seem to have a visible means of support even though she seems to have been at this for quite some time. She described herself as being homeless since April before the July 7th incident.
>
> She describes how in April her parents wanted her to do treatment, but they wanted her to do treatment in a way she didn't like. I don't know what that would mean, but maybe, you know, going to treatment. So she's – basically she's chosen this life of the heroin and the living outside as opposed to getting treatment.

6
7
8

Defense counsel also argued that "[J.S.'s] wandering around for eight hours with semen on [her] face … [is] pretty significant evidence that this encounter, sexual encounter, really wasn't that big of a deal."[4]

9
10
11

With respect to the victim N.W., defense counsel also emphasized her heroin usage stating, "How important is heroin to her? Well, she's chosen heroin over everything else in her life. Heroin is more important to her than anything." Dkt. 10, Ex. 10, at 518-522.

12

The prosecutor, in rebuttal, responded to these comments by stating:

13
14
15

> [Y]ou know what phrase I heard a lot in [defense counsel's] closing was heroin addict, right, not calling [J.S.] by her name, but a heroin addict, a homeless heroin addict. Maybe even worse, you know, [N.W.], a heroin addict, they've chosen heroin over everything else. Designed to dehumanize them, so you think of them as just homeless addicts, people who don't deserve your consideration, people who don't deserve the protection of the law.
>
> Well, that's not who they are. They are people. They told you about how they ended up in this situation, about their families, about their community, and they are people just as deserving of the protection of the law as anyone else.
>
> We talked a lot in voir dire about the difficulties of being homeless, how they're susceptible to victimization and how they deserve and how they need the very same protections that we all deserve. These are the people Mr. Stahl bullied and assaulted …

16
17
18

19

Dkt. 10, Ex. 10, at 530.

20

The Washington appellate courts rejected petitioner's prosecutorial misconduct claim. The

21

Court of Appeals explained its conclusion as follows:

22

23

---

[4] Defense counsel also attempted to imply during closing argument that J.S. engaged in prostitution in order to support her drug habit, stating: "[H]ere's how it works for a heroin addict that is a woman. You get heroin in return for a sexual act." Dkt. 10, Ex. 10, at 514. However, the trial court sustained the prosecutor's objection to defense counsel's speculation. *Id.*

Stahl argues that the prosecutor committed misconduct by mischaracterizing Stahl's argument so as to appeal to jurors' prejudices. Creating straw man arguments does not comport with the prosecutor's duty to seek convictions based on probative evidence and sound reason. State v. Thierry, 190 Wn. App. 680, 694, 360 P.3d 940 (2015), review denied, 185 Wn.2d 1015, 368 P.2d 171 (2016).

In his closing argument, Stahl repeatedly referred to victims J.S. and N.W. He stated that J.S. had "chosen this life of the heroin and the living outside as opposed to getting treatment. As part of the defense's narrative that N.W. had fabricated her allegations due to Stahl stealing N.W.'s heroin, defense counsel stated:

> She tells us that, well, she uses heroin not daily but not too much. That again, I mean can you – would a heroin addict minimize how much they use? How important is heroin to her? Well, she's chosen heroin over everything else in her life. Heroin is more important to her than anything.

In rebuttal, the prosecutor stated that the defense had attempted to dehumanize the victims through such statements. Stahl claims that he did no such thing and that the prosecutor's statements micharacterized the defense's arguments.

But the prosecutor's rebuttal was responsive to the defense's statements. The prosecutor stated, accurately, that the defense referenced that the victims had chosen a life of heroin. The prosecutor's rebuttal asked the jury to reject any inference that the victims "don't deserve your consideration." The prosecutor's remarks were not an improper straw man. They were an attempt to protect favorable witnesses' credibility in the face of the defense's numerous remarks on their heroin usage. The prosecutor did not commit misconduct by mischaracterizing the defense's argument. […]

Stahl also contends that the prosecutor improperly told the jury that policy considerations should inform their verdict. Specifically, Stahl argues that, by stating that the defense dehumanized the homeless victims, and that they were "just as deserving of the protection of the law as anyone else,' the prosecutor asked the jury to reach its verdict based on policy concerns. This, Stahl contends, mischaracterized his argument and appealed to jurors' sympathies.

Stahl equates this case to previous cases that have overturned convictions due to "send a message" closing arguments. For example, in State v. Bautista-Caldera, , [sic] the court found reversible error when the prosecutor asked the jury to convict to let "'children know that you're ready to believe them and [e]nforce the law on their behalf.'" 56 Wn. App. 186, 195, 783 P.2d 116 (1989) (alteration in original). State v. Ramos, 164 Wn. App. 327, 338, 342, 263 P.3d 1268 (2011) was similar. The court overturned after the prosecutor told the jury: "This is also why we are here today, so people can go out there and buy some groceries … or go to a movie … and not have to wade past the coke dealers in the parking lot." Id. at 338. Stahl claims that the prosecutor's statements in his case were analogous.

But, here the prosecutor's statements were the opposite. In Ramos and Bautista-Caldera, the prosecutor stated that homeless victims were "just as deserving of the protection of the law." He did not state or suggest that homelessness should give the victims more protection under the law, or that finding Stahl guilty would send a policy message regarding concern for homeless individuals. The prosecutor also asked the jury not to accept the defense's attempt to "dehumanize" the victims. But, this too is an attempt to push back on the defense's attack on the victims' credibility. The prosecutor's comments were not improper "send a message" comments. Rather, they were acceptable attempts to address the credibility issues raised by the defense.

REPORT AND RECOMMENDATION - 19

1    Dkt. 10, Ex. 21, at 755-757. The Supreme Court denied petitioner's petition for review without

2    comment. Dkt. 10. Ex. 23.

3         The record shows that the prosecutor's statements were an entirely reasonable response to

4    defense counsel's attempts to undermine the witnesses' (J.S. and N.W.) credibility by emphasizing

5    their homelessness and drug addiction. The state courts' rejection of petitioner's claim of

6    prosecutorial misconduct is not objectively unreasonable under the *Darden* factors. Petitioner has

7    not shown that these statements by the prosecutor rendered his trial fundamentally unfair. As the

8    state court noted, the record shows that the prosecutor's statements were an invited response to the

9    defense's arguments that the victims' homelessness and drug addiction undermined their

10   credibility as witnesses. With respect to the weight of the evidence, J.S. and N.W. both provided

11   straightforward, largely consistent testimony regarding the events in question, which was by and

12   large uncontradicted by any other evidence, and in J.S.'s case, there was also DNA evidence that

13   tended to support her claim. The prominence of the prosecutor's comments made during closing

14   argument was also minimal in the context of the entire trial, including J.S. and N.W.'s testimony.

15   Further, there is no indication here that the prosecutor misstated any of the evidence. Based on the

16   record in this case, petitioner has not shown the prosecutor's statements impacted the jury's ability

17   to fairly judge this case or impacted the result of the trial.

18        Therefore, petitioner has failed to show the state court's conclusion finding the prosecutor

19   did not engage in misconduct was contrary to, or was an unreasonable application of, clearly

20   established federal law, or was an unreasonable determination of the facts in light of the evidence

21   presented in this case. Accordingly, this claim should be denied.

22              b.   Vouching for Witness Credibility

23

REPORT AND RECOMMENDATION - 20

Petitioner also argues the prosecutor "improperly vouch[ed] for the honesty of the complaining witnesses" in his rebuttal during closing arguments. Dkt. 4, at 7.

"It is improper for the prosecution to vouch for the credibility of a government witness." *United States v. Roberts*, 618 F.3d 503, 533 (9th Cir. 1980). "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *U.S. v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir. 1993). Improper vouching also occurs when a prosecutor implicitly vouches for a witness's credibility. *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002) (citing *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985)). "[P]rosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying." *Necoechea,* 986 F.2d at 1276.

Here, the record shows that during closing argument, petitioner's trial counsel attacked the credibility of the witnesses J.S. and N.W. based upon their delay in reporting the incidents to police. Specifically, defense counsel emphasized that J.S. had walked around for several hours after the incident with semen on her face and in her hair but did not contact the police and argued that this discredited her allegation that she was raped. Dkt. 10, Ex. 10, at 512-513. Specifically, defense counsel stated: "[T]he wandering around for eight hours with the semen on your face … [is] pretty significant evidence that this encounter, sexual encounter, really wasn't that big of a deal." Dkt. 10, Ex. 10, at 513. And with respect to N.W., defense counsel stated that:

> [W]e know that police go to this camp with some frequency. We know that they were there that day. There was a number of them. And we know that, well, it's a place where police frequent.
> And yet it's two weeks before she tells the police about this instead of like, you know, that day or as soon as she can.

Dkt. 10, Ex. 10, at 522.

1    In his rebuttal closing argument, the prosecutor responded to the defense's arguments

2  regarding the witnesses delay in reporting, arguing that the delay was explained by the fact that

3  the witnesses did not want to get petitioner into legal trouble. Specifically, the prosecutor stated,

4  in relevant part:

5        [Defense counsel] talked about how, you know, oh, this couldn't have been that
      bad, they didn't – [J.S.] didn't report it right away, [N.W.] didn't report it for a few days.
6      That's true, they didn't report it for a while, and we talked a bit in voir dire about why
      people might not report sexual assault right away.
7        But, you know, they were pretty honest too that they weren't here trying to get Mr.
      Stahl into trouble, you know. To some of them he's still a friend, and really they hope that
8      he can just get some help.
        But also we heard a lot about their lives in general, about the life on the street and
9      what it's like. And it's not hard to imagine how difficult their lives are and how bad things
      may happen to these people regularly. So when something happens to them, they may react
10     differently than one of you. When somebody assaults them, they may not go directly to the
      police. When somebody rapes them, they may not call 911 right away. Because they're
11     ignored.

12  Dkt. 10, Ex. 10, at 528.

13    The Washington appellate courts rejected petitioner's vouching claim. The Washington

14  Court of Appeals explained its conclusion as follows:

15        Finally, Stahl argues that the prosecutor vouched for witness credibility. He points
      to the prosecutor's comment in closing arguments that J.S. and N.W. were forthcoming in
16     their motives for testifying. Specifically, the prosecutor stated: "But, you know, they were
      pretty honest too that they weren't here trying to get Mr. Stahl in trouble, you know. To
17     some of them he's still a friend, and really they hope that he can just get some help."
        It is misconduct for a prosecutor to personally vouch for the credibility of a
18     witness. State v. Brett, 126 Wn2d 136, 175, 892 P.2d 29 (1995). But a prosecutor has wide
      latitude in closing argument to draw reasonable inferences from the evidence and may
19     freely comment on witness credibility based on the evidence. State v. Lewis, 156 Wn. App.
      230, 240, 233 P.3d 891 (2010). And courts review comments made by a prosecutor during
20     closing argument in the context of the prosecutor's entire argument, the issues in the case,
      the evidence discussed in the argument, and the jury instructions. State v. Dhaliwal, 150
      Wn2d 559, 578, 79 P.3d 432 (2003).
21        Although the prosecutor described the witnesses' actions as "honest," the context
      shows that he was not personally vouching for their credibility. The prosecutor used the
22     term when addressing the witnesses' delay in reporting the crimes. The defense's theory
      was that this delay suggested a lack of credibility. The prosecutor described the witnesses
23     as honest one sentence after conceding that the victims did not immediately report Stahl to
      the police. The "honest" comment was a reference to the witnesses acknowledging they
      delayed in reporting the crimes, and testifying, as J.S. did, that she did not want to get Stahl

REPORT AND RECOMMENDATION - 22

in trouble. The prosecutor did not vouch for the credibility of the witnesses by merely highlighting that their actions and testimony were consistent.

Because we conclude that none of the prosecutor's comments were improper, we need not decide whether they were prejudicial. The prosecutor did not commit misconduct.

Dkt. 10, Ex. 21. The Supreme Court denied the petition for review without comment. Dkt. 10, Ex. 23.

The evidence fails to show the prosecutor improperly vouched for the witnesses J.S. and N.W. The state court reasonably determined that, viewing the prosecutor's comment in context, his use of the term "honest" related to the witnesses' acknowledgment of the fact that they had delayed in reporting the incidents, and was not a personal assurance of the witnesses' overall "honesty" in testifying nor a reflection of the prosecutor's personal beliefs. The state court also reasonably found the prosecutor properly argued, in response to defense counsel's argument, that the delay in reporting did not render them unbelievable because it was consistent with the testimony that there was concern about getting petitioner into legal trouble or that, because of their lifestyle, the complaint would be ignored. The prosecutor's argument was supported by the record including J.S.'s testimony that she considered petitioner a "friend" and did not want to get him into legal trouble, and N.W.'s testimony that she had had a prior experience with law enforcement where her complaint was not taken seriously. Dkt. 10, Ex. 9, at 380-382, 421, Ex. 8, at 244-245.

The state court reasonably concluded that, read in context, the prosecutor's statement was merely highlighting that the witnesses' actions and testimony were consistent, not improperly vouching for their credibility. Petitioner has not shown the state court's conclusion that the prosecutor did not improperly vouch for the credibility of the witnesses was contrary to or an unreasonable application of clearly established federal law. *See Necoechea*, 986 F.2d at 1279 ("It is not vouching, however, for the prosecutor to argue about the truthfulness of a witness's statements based upon evidence in the record, provided that the statements do not imply that the

prosecution is personally assuring the witness's veracity or reflect the prosecutor's personal beliefs.").

Even if the statement did constitute improper vouching, petitioner has not shown how this single statement impacted the fairness of his trial. The prosecutor's statement was an invited response to the defense's attempt in closing argument to discredit the witnesses, J.S. and N.W., based on their delay in reporting the incidents. J.S. and N.W. both provided straightforward, largely consistent testimony regarding the events in question, which was by and large uncontradicted by any other evidence, and in J.S.'s case, there was also DNA evidence that tended to support her claim. The prominence of this one-time comment by the prosecutor made during closing argument was minimal in the context of the entire trial, including J.S. and N.W.'s testimony. Further, there is no indication the prosecutor misstated the evidence – J.S. and N.W. did acknowledge their delay in reporting; J.S. attributing the delay to her concern about getting petitioner into legal trouble, and N.W. attributing the delay to a prior experience with law enforcement where her complaint had not been taken seriously. Dkt. 10, Ex. 9, at 380-382, 421, Ex. 8, at 244-245. Based on the facts of this case, petitioner has not shown this single statement by the prosecutor impacted the jury's ability to fairly judge this case or impacted the result of the trial.

Therefore, petitioner has failed to show the state court's conclusion finding the prosecutor did not engage in misconduct was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented in this case. Accordingly, this claim (and Ground 2 as a whole) should be denied.

2.    *Ground 3: Ineffective Assistance of Trial Counsel in Failing to Object to Prosecutor's Closing Argument*

REPORT AND RECOMMENDATION - 24

1       Petitioner claims trial counsel was ineffective in failing to object to the prosecutor's closing

2   arguments identified in Ground 2.

3       The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

4   counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance

5   claim is that counsel's unprofessional errors so upset the adversarial balance between defense and

6   prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v.*

7   *Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel are evaluated

8   under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that

9   counsel's performance was deficient and, (2) that the deficient performance prejudiced the

10  defense. *Strickland*, 466 U.S. at 687.

11      With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

12  performance fell below an objective standard of reasonableness. *Id.*, at 688. It is not ineffective

13  assistance to fail to make a meritless objection. *See Dubria v. Smith*, 224 F.3d 995, 1003-04 (9th

14  Cir. 2000) (en banc) (trial counsel was not ineffective for failing to object to prosecutor's closing

15  argument when argument was not improper); *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir.

16  2005); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994). Judicial scrutiny of counsel's performance

17  must be highly deferential. *Id.* at 689. "A fair assessment of attorney performance requires that

18  every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

19  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

20  perspective at the time." *Strickland*, 466 U.S. at 689. In order to prevail on an ineffective assistance

21  of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions

22  might be considered sound trial strategy. *Id.*

23

REPORT AND RECOMMENDATION - 25

1   Counsel's strategy with respect to objections is generally entitled to deference, and

2   reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range

3   of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see, e.g., United States v.*

4   *Mejia–Mesa*, 153 F.3d 925, 931 (9th Cir. 1998) (explaining that "a few missed objections alone,

5   unless on a crucial point, do not rebut the strong presumption that counsel's actions (or failures to

6   act) were pursuant to his litigation strategy and within the wide range of reasonable

7   performance."). Trial counsel may properly decide to "refrain from objecting during closing

8   argument to all but the most egregious misstatements by opposing counsel on the theory that the

9   jury may construe their objections to be a sign of desperation or hyper-technicality." *United States*

10  *v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991); *see Necoechea*, 986 F.2d at 1281 ("Because many

11  lawyers refrain from objecting during opening statement and closing argument, absent egregious

12  misstatements, the failure to object during closing argument and opening statement is within the

13  'wide range' of permissible professional legal conduct."); *Dubria*, 224 F.3d at 1003–04 (9th Cir.

14  2000) (finding that failure to object to closing argument in which prosecutor referred to defendant

15  as "the biggest liar you've ever encountered" and defendant's story as a "piece of garbage" did not

16  constitute deficient performance).

17  The second prong of the *Strickland* test requires a showing of actual prejudice related to

18  counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

19  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

20  would have been different. A reasonable probability is a probability sufficient to undermine

21  confidence in the outcome." *Strickland*, 466 U.S. at 694. The reviewing court need not address

22  both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

23

1    When considering an ineffective assistance of counsel claim on federal habeas review,

2    "[t]he pivotal question is whether the state court's application of the *Strickland* standard was

3    unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court must be granted a

4    deference and latitude that are not in operation when the case involves review under the *Strickland*

5    standard itself." *Id.* Thus, in addition to affording deference to counsel's trial strategy with respect

6    to objections, federal habeas courts must also be deferential to the state court's conclusion that that

7    decision not to object was reasonable. *Id.* at 105; *Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir.

8    2015) ("We consider whether it would have been reasonable to reject [petitioner's] allegation of

9    deficient performance for any of the reasons expressed by the court of appeal." (citations and

10   alterations omitted)). "The defendant bears the heavy burden of proving that counsel's assistance

11   was neither reasonable nor the result of sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d

12   926, 939 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

13   The Washington appellate courts rejected petitioner's claim of ineffective assistance of

14   counsel. The Washington Court of Appeals explained its conclusion as follows:

15   Stahl contends that his counsel was ineffective by failing to object to the
     prosecutor's remarks that he argues were misconduct. To prevail on an ineffective
16   assistance of counsel claim, the defendant must show that (1) defense counsel's
     representation was deficient in that it fell below an objective standard of reasonableness
17   and (2) the deficient performance prejudiced the defendant. *State v. Sutherby*, 165 Wn2d
     870, 883, 204 P.3d 916 (2009). But, because we hold that the prosecutor's comments were
18   not improper, there was neither deficient performance, nor prejudice to Stahl as a result of
     deficient performance. Stahl did not receive ineffective assistance of counsel.

19   Dkt. 10, Ex. 21, at 759.

20   Here, as discussed above, the state appellate court reasonably determined the prosecutor's

21   comments were not improper and, therefore, that trial counsel was not deficient in failing to object,

22   nor was petitioner prejudiced. *See Dubria*, 224 F.3d at 1003-04 (trial counsel was not ineffective

23   for failing to object to prosecutor's closing argument when argument was not improper). The Court

also notes that the record shows that the prosecutor's statements during closing argument were not "egregious misstatements" but were reasonable responses to defense counsel's challenges to the credibility of the victims' testimony. Thus, even if the prosecutor's statements could be considered somehow objectionable, defense counsel's failure to object during closing argument was within the 'wide range' of permissible professional legal conduct. The Court further notes that the evidence against petitioner, including largely uncontradicted first-person eyewitness accounts from the victims, was significant, and petitioner fails to show prejudice due to counsel's alleged errors. *See also Carranza v. Martel*, 722 F. App'x 612, 615 (9th Cir. 2018) (finding that "in light of the overwhelming evidence against [petitioner] ... the decision not to object during the closing ... was not prejudicial"). Under the circumstances, it cannot be said that there was any reasonable probability of a different outcome at trial or on appeal if counsel had objected to the prosecutor's statements.

In sum, applying the doubly deferential standard required by the AEDPA and *Strickland*, the Court concludes that petitioner is also not entitled to relief on this claim. Accordingly, Ground 3 should be denied.

### 3.    *Ground 5: Confrontation Clause*

Petitioner claims his Confrontation Clause rights were violated when the state court admitted certain out-of-court statements made by Alicia Nickerson (the victim of the fourth-degree assault charged in Count 4) and photographs of her injuries.

The Sixth Amendment's Confrontation Clause confers upon the accused, "[i]n all criminal prosecutions, ... the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford v. Washington*, the Supreme Court held the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was

unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford*, 541 U.S. 36, 54-55 (2004). Only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause. *See id.* at 51. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). While the Court in *Crawford* declined to provide a comprehensive definition of "testimonial," the Court stated "[v]arious formulations of [the] core class of 'testimonial' statements:

> ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id*. at 51–52 (internal quotation marks, ellipsis, and citations omitted).

In *Crawford*, the Court held that the defendant's right of confrontation was violated because the trial court admitted evidence regarding his wife's statements in response to police interrogation, and she did not testify at trial. *Crawford*, 541 U.S. 36, 40–42, 65–69. The Court found the statements to be testimonial, because she made them "while in police custody, herself a potential suspect in the case." *Id*. at 65–69.  In several opinions since *Crawford*, the Supreme Court has further clarified, to some extent, what constitutes a "testimonial" statement for purposes of the Confrontation Clause. *See, e.g., Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006); *Michigan v. Bryant*, 562 U.S. 344, 361, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011); *Ohio v. Clark*, 576 U.S. 237, 245, 135 S.Ct. 2173, 2181 (2015). In these opinions, the Supreme Court has focused on the "primary purpose" of the questions and responses in order to

determine whether a particular statement is testimonial or nontestimonial. In *Davis*, the Court held that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822.

In *Clark*, the Court summarized the focus of the inquiry as follows: "In the end, the question is whether, in light of all the circumstances viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out of court substitute for trial testimony.'" *Clark*, 576 U.S. 237, 245, 135 S.Ct. 2173, 2181 (2015). Thus, where the objective circumstances indicate that the primary purpose of questioning is not investigative or intended to obtain evidence for use at trial, the Supreme Court has found the responsive statements to be nontestimonial. *See, e.g., Clark*, 576 U.S. 237 (holding child's statements to teachers about abuse by defendant nontestimonial because primary purpose of conversation was to "identify [ ] and end[ ] the threat" of violence during "an ongoing emergency"); *Bryant*, 562 U.S. at 361 (holding that dying victim's identification of defendant in response to officer's question of who had shot victim was nontestimonial; primary purpose of question was to enable police to meet ongoing emergency of locating armed assailant, not to obtain evidence for trial; "the prospect of fabrication in statements given for the primary purpose of resolving [an] emergency is presumably significantly diminished"); *Davis*, 547 U.S. at 822 (holding statements made during a 911 call nontestimonial because the "circumstances objectively indicat[e] that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency.").

1    In contrast, statements made to the police during an interview at a witness's home about a

2    domestic violence incident were found to be testimonial where there was no ongoing emergency,

3    and the "primary purpose of the interrogation [was] to establish or prove past events potentially

4    relevant to later criminal prosecution." *Davis*, 547 U.S. at 829–30; *see also United States v. Brooks*,

5    772 F.3d 1161, 1169–70 (9th Cir. 2014) (responses to a U.S. Postal Inspector's questions were

6    testimonial because "a reasonable person would have understood the primary purpose to be

7    investigative").

8    While the Supreme Court has declined to categorically find statements made to someone

9    other than law enforcement personnel nontestimonial, it has stated that "[s]tatements made to

10   someone who is not principally charged with uncovering and prosecuting criminal behavior are

11   significantly less likely to be testimonial than statements given to law enforcement officers." *See*

12   *Clark*, 576 U.S. at 249. "[T]he Ninth Circuit has found 'private' conversations between friends,

13   acquaintances, or even between co-conspirators, [to be] 'non-testimonial.'" *Meraz v. Pfeiffer*, 2017

14   WL 7101154, at *19, n.4 (C.D. Cal. Dec. 12, 2017), *report and recommendation adopted*, 2018

15   WL 587846 (C.D. Cal. Jan. 29, 2018) (citing *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir.

16   2005); *Jensen v. Pliler*, 439 F.3d 1086, 1089-90 (9th Cir. 2005)). Confrontation Clause rights may

17   also be waived. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 2534 n. 3, 174

18   L.Ed.2d 314 (2009) ("The right to confrontation may, of course, be waived, including by failure

19   to object to the offending evidence ...").

20   Here, the trial court addressed the issue of Ms. Nickerson's out-of-court statements prior

21   to trial. Dkt. 10, Ex. 3, at 18-21. In addressing the statements, defense counsel did not object to

22   the admission of Ms. Nickerson's out-of-court statements as excited utterances under

23

1    Washington Evidence Rule 803(a)[5] but asserted that a foundation for the statements would need

2    to be laid at trial before they could be admitted. *Id.*

3         At trial Jose Leon testified that on July 7, 2015, upon returning to the homeless camp he

4    found Ms. Nickerson crying, shaking and yelling, and that she described how petitioner had tried

5    to "mandhandle" her. Dkt. 10, Ex. 8, at 280-284. Mr. Leon testified that he confronted petitioner

6    who began physically attacking both Mr. Leon and Ms. Nickerson with a two-by-four and

7    destroying their living space. Dkt. 10, Ex. 8, at 289-293. Albert Coffin also testified that he was

8    outside his home working on his fence when he saw a scuffle in the area of the homeless camp

9    involving a white male, a Hispanic male (who he identified from photographs as Mr. Leon), and a

10   female. Dkt. 10, Ex. 8, at 212-216. Mr. Coffin testified that the white male was the aggressor and

11   that he could hear the woman yelling "don't hit me," "leave me alone," and "get off me." *Id.* Mr.

12   Coffin testified that he called the police and that the woman (whom he identified from photographs

13   as Ms. Nickerson), ran up the hill toward his yard upset and crying and stated, "he's beating us

14   up." *Id.*, at 216-218. Officer Nathan Lemberg also testified that he responded to the 911 call and

15   took photographs of Ms. Nickerson's and Mr. Leon's injuries and those photographs were

16   admitted. *Id.*, at 190-196.  However, defense counsel's hearsay objection as to what Ms. Nickerson

17   told Officer Lemberg was sustained. *Id.*, at 190-191.

18        After setting forth the relevant United States Supreme Court holdings, the Washington

19   appellate courts rejected petitioner's Confrontation Clause claim. The Court of Appeals explained

20   its conclusion as follows:

21

22   [5] Washington Evidence Rule 803(a) provides, in relevant part: "The following are not excluded by the
     hearsay rule, even though the declarant is available as a witness: [...] (2) *Excited Utterance.* A statement

23   relating to a startling event or condition made while the declarant was under the stress of excitement caused
     by the event or condition."

1

2      Nickerson did not testify at trial. Albert Coffin, who owned a home near the encampment, testified he heard a woman yelling "don't hit me," "get off me" and "leave me alone." Coffin testified that a woman identified as Nickerson approached him, upset and crying, and told Coffin that "he's beating up my boyfriend." Stahl's objection to this

3  testimony was overruled. Leon testified without objection, that when he returned from the store Nickerson was crying and yelling and said that Stahl tried to "manhandle" her. No law enforcement officers testified about any of Nickerson's statements.[6]

4      Here Nickerson's statements to Coffin and Leon were nontestimonial. There [sic]

5  were not made for the primary purpose of creating a record for trial. Coffin and Leon were not law enforcement officers, and Nickerson's statements to them were made while she

6  was still facing danger from Stahl. The admission of Nickerson's nontestimonial statements did not violate the Confrontation Clause.

7  Dkt. 10, Ex. 29, at 1060.

8      The Supreme Court also rejected petitioner's Confrontation Clause claim on discretionary

9  review holding:

10      Mr. Stahl first argues that the trial court violated his constitutional right of confrontation in relation to the fourth degree assault charge by admitting through several

11  witnesses the hearsay statements of the nontestifying victim, Alicia Nickerson. In finding no violation, the acting chief judge determined that Ms. Nickerson's statements were not

12  testimonial and thus were not subject to the confrontation clause. *See State v. Scanlan*, 445 P.3d 960, 964 (Wash. 2019) (only testimonial statements prohibited by confrontation

13  clause). But Mr. Stahl's argument fails for a more basic reason: he did not object to the statements on the ground that they violated his right of confrontation. The only issue raised

14  at trial was whether Ms. Nickerson's statements were admissible under the excited utterance exception to the hearsay rule. *See* ER 803(a)(2). When Mr. Stahl posed an

15  objection on hearsay grounds, the State proceeded to lay a foundation for the testimony under the excited utterance exception by asking the witness about Ms. Nickerson's

16  demeanor, and when it did so, the trial court overruled the objection. In the absence of objections based on the confrontation clause, Mr. Stahl waived such objections. *State v.*

17  *Burns*, 193 Wn2d 190, 210-12, 438 P.3d 1183 (2019).[7] Mr. Stahl also argues that the trial court erred in admitting photographs of Ms. Nickerson's injuries that effectively

18  constituted out-of-court testimony. But again, he did not object to photographs on confrontation grounds, and indeed he did not object to them at all.

19  Dkt. 10, Ex. 31, at 1116-1117.

20

21

22  [6] [Footnote 2 by Court of Appeals] Stahl also challenges testimony given by Officer Escalante (first name unknown), Lieutenant Charles Meyer, and Officer Nathan Lemberg. It does not appear that any of these witnesses testified to statements made by Nickerson.

23  [7] [Footnote 1 by Supreme Court] Mr. Stahl complains that the acting chief judge only addressed statements of Ms. Nickerson relayed by two civilian witnesses, ignoring statements relayed by police officers. But as to none of these statements did Mr. Stahl interpose a confrontation clause objection.

REPORT AND RECOMMENDATION - 33

1    The record appears to support the Supreme Court's finding that petitioner failed to object

2    to the admission of Ms. Nickerson's statements or the photographs on Confrontation Clause

3    grounds. Thus, it is likely petitioner's Confrontation Clause claim was waived under state law. But

4    even assuming petitioner's Confrontation Clause claim was not waived, in evaluating the claim on

5    the merits, the Court of Appeals reasonably determined the statements and photographs at issue

6    do not implicate the Confrontation Clause. The record supports the Court of Appeals' conclusion

7    that the statements in question were made at or very close in time to petitioner's assaultive actions

8    and were made under circumstances where Ms. Nickerson was still facing danger from petitioner.

9    Further, neither Mr. Coffin nor Mr. Leon were law enforcement personnel or functioning as such.

10   In sum, Ms. Nickerson's statements were not "functionally identical to live, in-court testimony."

11   *Melendrez-Diaz*, 557 U.S. at 310-11. Nor were the statements made with the "primary purpose of

12   assisting in [petitioner's] prosecution." *Clark*, 576 U.S. at 249.[8] The Court of Appeals reasonably

13   determined that Ms. Nickerson's out-of-court statements to Mr. Leon and Mr. Coffin were not

14   "testimonial" under Supreme Court case law.

15   The state court also reasonably rejected petitioner's claim that the admission of the

16   photographs of Ms. Nickerson's injuries violated the Confrontation Clause. The Confrontation

17   Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'"

18   *Crawford*, the 541 U.S. at 51. "Testimony, in turn, is typically a solemn declaration or affirmation

19   made for the purpose of establishing or proving some fact." *Id.* (internal quotation marks and

20   brackets omitted). The photographs of Ms. Nickerson's injuries were not "witnesses" against

21

22   _____

[8] Petitioner also challenges the testimony of Officer Lemberg and "others" (perhaps referring to Officer
Escalante, and Charles Meyer, a lieutenant with the fire department) on Confrontation Clause grounds.

23   Dkt. 4-2, at 2; Dkt. 25, at 18. But none of these witnesses appears to have testified to any statements made
by Ms. Nickerson. Dkt. 10, Ex. 8, at 190, 306; Ex. 9, at 372-373.

petitioner. The photographs did not "bear testimony" by way of declaring or affirming anything with a "purpose." Therefore, their admission did not violate the Confrontation Clause. *See United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014) (holding that admission of a photograph of a seized parcel containing drugs did not violate the Confrontation Clause because it did not involve a witness bearing testimony); *See United States v. Lopez–Moreno,* 420 F.3d 420, 436 (5th Cir. 2005) (holding admission of a voter identification card did not violate Confrontation Clause).

The Court finds petitioner has failed to show the state courts' rejection of his Confrontation Clause claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or was an unreasonable determination of the facts in light of the evidence presented in this case. Accordingly, Ground 5 should be denied.

4.    *Ground 6: Appointment of Substitute Counsel*

Petitioner claims the trial court erred in denying his pretrial requests for substitute counsel without conducting an adequate inquiry into the concerns petitioner expressed regarding his trial attorney's alleged conflict of interest.

The Sixth Amendment not only guarantees a criminal defendant counsel of reasonable competence, it also guarantees a right to representation free of conflicts. *Wood v. Georgia*, 450 U.S. 261, 272 (1981). The Sixth Amendment does not, however, guarantee an accused a "meaningful attorney-client relationship."  *See Morris v. Slappy*, 461, U.S. 1, 13-14 (1983). Thus, not every conflict between an accused and his counsel implicates the Sixth Amendment.  *See Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000).

The Ninth Circuit has held that a conflict between an accused and his counsel only infringes on the accused's Sixth Amendment rights "where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel."

1   *Stenson v. Lambert*, 504 F.3d 873 (9th Cir. 2007) (citing *Schell*, 218 F.3d at 1026); *accord Daniels*

2   *v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) (nature and extent of conflict must be so great

3   as to "depriv[e] the defendant of representation guaranteed by the Sixth Amendment"). "[T]here

4   is no automatic right to a substitution of counsel simply because the defendant informs the trial

5   court that he is dissatisfied with appointed counsel's performance." *Jackson v. Ylst*, 921 F.2d 882,

6   888 (9th Cir. 1990). "Disagreements over strategical or tactical decisions do not rise to [the] level

7   of a complete breakdown in communication." *Stenson*, 504 F.3d at 886 (citing *Schell*, 218 F.3d at

8   1026). The Ninth Circuit has identified three factors a court should consider in determining

9   whether an irreconcilable conflict existed: (1) the extent of the conflict; (2) whether the trial judge

10  made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to

11  substitute counsel. *Stenson*, 504 F.3d at 886; *Daniels*, 428 F.3d at 1197.

12          The Washington appellate courts rejected petitioner's claim challenging the trial court's

13  denial of his motion to substitute counsel. The Court of Appeals explained its conclusion as

14  follows:

15          Stahl next asserts that the trial court erred when it denied his request to discharge
        appointed defense counsel Mark Flora and substitute new counsel. He cites to two instances
16      in the record in which he made explicit requests for new counsel. The first was October 6,
        2015:

17          STAHL: Your Honor, may I say something?

18          THE COURT: You may.

19          STAHL: With all due respect, I would like to make a request for a change
        in counsel.

20          THE COURT: All right. Is there anything else you want to say about that?

21          STAHL: Yes, sir. I just feel like there's a conflict of interest.

22          THE COURT: All right. Mr. Flora, is there anything you want to say? Of
        course, you're not required to say anything, but, as you know, I always ask
23      the question of everyone when that motion is made.

MR. FLORA: Sure. I don't have anything to add.

THE COURT: Mr. Stahl, I've heard Mr. Flora argue quite persuasively, although I denied ultimately, on the issues of the amendments, continuances, and now the bond hearing. Your case is coming up for trial very soon, and if I were to grant you new counsel, of course you'd start all over again. But that's not really the issue. I think that I don't see any conflict when I observe you in court and Mr. Flora sounds like he's working very hard to prepare your case, so I see no basis for granting your motion. Your motion is denied.

On October 13, 2015, Stahl again requested new counsel.

STAHL: I've been denied my right to full discovery and I've been denied a right to present my own witnesses by my attorney. Last Saturday he told me that he was not going to get my witnesses and he was not going to get me any –

THE COURT: Well, wait a minute. Before you go any further, I'm more than willing to hear your motion to discharge counsel. That's fine, but I don't want you to tell me anything about the facts of your case and I don't want you to reveal any of the strategies in your case. Everything you say here is being recorded and the Prosecutor is standing right there, so keep that in mind; okay?

STAHL: Okay. I got that.

THE COURT: Okay.

STAHL: But I just want to ask to let the Court know that there is a conflict of interest. My attorney is biased against me, and, therefore, I do not feel confident in his representation and I would ask to dismiss him and I would ask for new counsel.

THE COURT: Mr. Flora, is there anything that you'd like to say?

MR. FLORA: No, Your Honor.

THE COURT: So, Mr. Stahl, to obtain new counsel, what the Court looks for is to try to make a determination whether communication has broken down such that you simply can't proceed with a defense and those types of things. The issues that you're talking about are strategic issues, those types of things, and counsel is given a lot of leeway in how to handle those things. Mr. Flora has also got action responsibilities that he has to adhere to in determining, you know, what motions he's going to bring and what witnesses he's going to call and those kinds of things. I know that sometimes people disagree about those kinds of things, and it can be a sense of frustration and I appreciate that, but it doesn't meet the basis for discharging counsel and obtaining new counsel. But what I will tell you is that I'll deny it without prejudice, which means that if, in the future, you

1

2

feel that there's just no communication and you want to bring it back to
the Court's attention, you can do that.

STAHL: There is a breakdown in communication and he has lied to me.
I've asked him about certain questions and he has bold-faced lied to me
about his answers and prior things. So he has lied to me, so there is a
breakdown in communications, and that is one of my things.

THE COURT: I'm going to deny it for now and you can bring it up again
later.

3

4

5

6

7

8

9

10

11

12

The Sixth Amendment to the United States Constitution guarantees that, in "all criminal
prosecutions, the accused shall…have the assistance of counsel for his defense," but it does
not give an indigent defendant an absolute right to choose any particular advocate. U.S.
Const. amend VI; State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). A criminal
defendant must show good cause to warrant substitution of counsel, such as a conflict of
interest, an irreconcileable conflict, or a complete breakdown in communication between
the attorney and defendant. State v. Varga, 151 Wn.2d 179, 2000, 86 P.3d 139 (2004). "The
general loss of confidence or trust alone is not sufficient to substitute new counsel."
Stenson, 132 Wn.2d at 734. Nor is a defendant's "general dissatisfaction and distrust" with
counsel's performance enough to compel substitution of counsel. Varga, 151 Wn.2d at
200-01. Factors to be considered in a decision to grant or deny a motion to substitute
counsel are (1) the reasons given for the dissatisfaction, (2) the court's own evaluation of
counsel, and (3) the effect of any substitution upon the scheduled proceedings. State v.
Stark, 48 Wn.App. 245.
    Here, Stahl fails to show a conflict of interest or a complete breakdown in
communication. Both times Stahl requested new counsel, he made only vague and general
allegations of conflicts he was having with Flora, and was unable to identify any specific
basis for substitution of counsel. Stahl contends that it was the duty of the trial court to
further inquire into the nature of any alleged conflicts. But Stahl cites no authority in
support of this proposition. The trial court properly considered Stahl's reasons for the
request, its own evaluation of Flora's performance, and the imminent trial date. Stahl fails
to establish that he was denied his Sixth Amendment right to counsel.

13

14

15

16

Dkt. 10, Ex. 29, at 1062.

17

The Washington Supreme Court also rejected petitioner's claim on discretionary review,

18

stating:

19

20

21

22

23

Mr. Stahl next argues that the trial court did not adequately inquire into a claimed
conflict of interest with his appointed counsel, which he brought to the court's attention in
seeking substitution of counsel. But the court invited Mr. Stahl to speak on his motion to
substitute, and he identified no conflict of interest. When Mr. Stahl again asked for
substitution later, he did not identify any disqualifying conflict of interest but only
disagreement with counsel's handling of the case. See State v. Cross, 156 Wn.2d 580, 607,
132 P.3d 80 (2006), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427
P.3d 621 (2018) (conflict over strategy not a conflict of interest). Mr. Stahl claimed that
counsel had lied to him but did not specify what counsel had lied about. The court at that
point stated it was denying the motion to substitute but told Mr. Stahl he could bring the

REPORT AND RECOMMENDATION - 38

<blockquote>
matter up again later. He did not do so. Mr. Stahl contends that the trial court should have inquired further. An inquiry must be adequate, <em>id.</em> at 610, but Mr. Stahl does not show that the court's inquiry was inadequate in the circumstances. The court gave him the opportunity to explain his problem with counsel.
</blockquote>

Dkt. 10, Ex. 31, at 1117.[9]

The United States Supreme Court's holdings on Sixth Amendment conflicts of interest have been limited to cases involving actual conflicts based on multiple concurrent representation of criminal defendants. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). In *Mickens*, the Court made clear that any extension of its Sixth Amendment conflict jurisprudence beyond this context remained an open question. *Id.* at 176. Petitioner's conflict claim does not fall within the scope of the Supreme Court's Sixth Amendment jurisprudence and the state court's adjudication of the claim therefore cannot be deemed contrary to any clearly established federal law. *Brewer*, 378 F.3d at 955.

As set forth above, the Ninth Circuit case law in this area is more expansive in that it is not confined to claims alleging an actual conflict of interest but also incorporates Sixth Amendment claims alleging an irreconcilable conflict amounting to the constructive deprivation of counsel. The state court's decision with respect to petitioner's Sixth Amendment claim was not inconsistent with the Ninth Circuit case law, and the court reasonably rejected the claim as nothing in the record demonstrates that there was such a substantial conflict between petitioner and his appointed counsel that he was effectively denied his Sixth Amendment right to counsel. As the state court noted, petitioner was given the opportunity to speak on his motions to substitute but failed to identify any specific disqualifying conflict of interest instead describing disagreement with

---

[9] The Court notes that it appears petitioner raised a similar claim of attorney conflict on direct appeal in his pro se statement of additional rounds for relief. Dkt. 10, Ex. 19, at 20-22. The Court of Appeals dismissed the claim stating: "Stahl does not explain the specific conflict, actual or apparent, that his counsel had. His argument primarily discusses his dissatisfaction with counsel's actions, not any conflicts of interest that were present. We therefore reject his arguments on this issue. Ex. 21, at 763-764.

1    counsel's handling of the case. Dkt. 10, Ex. 1, at 7-8, Ex. 2, at 16-18. But disagreements with

2    counsel's tactical decisions is not enough to establish an irreconcilable conflict resulting in the

3    constructive denial of assistance of counsel. *See, e.g., Stenson v. Lambert*, 504 F.3d 873, 886-87

4    (9th Cir. 2007) (no irreconcilable conflict where defense counsel refused to pursue defendant's

5    suggested trial strategy that counsel did not believe would succeed, and defendant and second-

6    chair attorney were communicating with each other). And, as the state court observed, although

7    petitioner made conclusory allegations that counsel had lied to him and was biased, the record

8    shows he offered no explanation supporting those allegations. Dkt. 10, Ex. 1, at 7-8, Ex. 2, at 16-

9    18. The court also specifically denied petitioner's second motion to substitute without prejudice

10   stating that "if in the future you feel that there's just no communication and that you want to bring

11   it back to the Court's attention, you can do that." Dkt. 10, Ex. 2, at 18. But petitioner did not raise

12   the issue again.[10] Petitioner argues the trial court should have inquired further about the alleged

13   conflict but he cites no Supreme Court cases indicating a further inquiry was required under the

14   circumstances and, on this record, the Court cannot conclude the state court erred in rejecting

15   petitioner's claim.

16   In sum, petitioner fails to demonstrate that the state court's rejection of his claim was

17   contrary to or an unreasonable application of clearly established federal law, or an unreasonable

18   determination of the facts. Accordingly, Ground 6 should be denied.

19        5.       *Ground 7: Appointment of Counsel for New Trial Motion and Sentencing*

20

21

22   [10] The Court also notes that, in his response to respondent's answer, petitioner asserts in conclusory fashion
     that as a result of the conflict with counsel, he did not testify. Dkt. 24, 25. But the record indicates that
23   petitioner was informed it was his choice alone whether to testify, that trial counsel conferred with petitioner
     twice (off the record) regarding whether he would testify in his own defense and petitioner declined on both
     occasions and informed the court directly that he would not be testifying. Dkt. 10, Ex. 4, at 112, Ex. 9, at
     455.

REPORT AND RECOMMENDATION - 40

1    Petitioner claims he was denied his right to counsel for purposes of arguing his motion for

2  a new trial and for sentencing. Dkt. 4-2.

3    The state appellate courts rejected petitioner's claim. The Court of Appeals explained its

4  conclusion as follows:

5      Stahl next contends that he was denied his right to counsel at sentencing. After
       trial, Stahl validly waived his right to counsel and chose to proceed pro se. The trial court
6      appointed Flora to continue to act as standby counsel. However, when Stahl filed a motion
       for a new trial based on ineffective assistance of counsel, Flora moved to withdraw as
7      standby counsel. The trial court granted the motion. Stahl requested appointment of new
       standby counsel. The trial court denied the motion.
8          Defendants may waive their Sixth Amendment right to assistance of counsel and
       decide to represent themselves at trial. State v. Romero, 95 Wn. App. 323, 326, 975 P.2d
9      564 (1999). But "[o]nce an unequivocal waiver of counsel has been made, the defendant
       may not later demand the assistance of counsel as a matter of right since reappointment is
10     wholly within the discretion of the trial court." State v. DeWeese, 117 Wn.2d 369, 376-77,
       816 P.2d 1 (1991). Additionally, if a defendant chooses self-representation, he or she does
11     not have a right to standby counsel. DeWeese, 117 Wn.2d at 379. "The right to self-
       representation in a criminal matter … is an all-or-nothing process." Romero, 95 Wn.App.
12     at 326. Any appointment of standby counsel is within the trial court's discretion. State v.
       Stearman, 187 Wn. App. 257, 265, 348 P.3d 394 (2015).
13         Here, Stahl did not have a constitutional right to standby counsel. Nor did Stahl
       have a constitutional right to reappointment of counsel once he had validly waived his right
14     to counsel.[11] And Stahl does not demonstrate that the trial court abused its discretion in this
       regard. Stahl fails to establish error.

15  Dkt. 10, Ex. 29, at 1063-1064.

16    The Supreme Court also rejected this claim on discretionary review, offering the following

17  explanation:

18        Mr. Stahl also urges that he was deprived of his right to counsel at sentencing and
       in relation to a motion for a new trial that was to be heard just before sentencing. But before
19     these proceedings took place, Mr. Stahl had waived his right to counsel after an extensive
       colloquy with the trial court. The court at that time made very clear to Mr. Stahl that his
20     request to proceed pro se constituted a waiver of his right to counsel going forward, and
       that he had no right to reappointment of counsel. The court appointed trial counsel as
21     standby counsel, but at the scheduled hearing on the new trial motion Mr. Stahl said he
       wanted new standby counsel or a full appointment of new counsel. The court declined to
22     substitute standby counsel, and it would not appoint new counsel to argue the new trial
       motion because the motion was Mr. Stahl's as a pro se litigant. Mr. Stahl had no right to
23     new standby counsel (or standby counsel at all), and once he waived his right to counsel,
       whether to reappoint counsel was within the trial court's discretion. State v. DeWeese, 117

---

[11] [Footnote 3 by Court of Appeals] Stahl does not challenge the validity of his waiver.

REPORT AND RECOMMENDATION - 41

1

2

      Wn.2d 369, 376-79, 816 P.2d 1 (1991). Mr. Stahl demonstrates no abuse of discretion in
the trail court's actions presenting an arguable basis for relief by personal restraint petition.

Dkt. 10, Ex. 31, at 1118-1119.

3

      The Sixth Amendment guarantees a criminal defendant the right to counsel at all critical

4

stages of the criminal process. *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004); *Gideon v. Wainwright*,

5

372 U.S. 335, 344 (1963). At the same time, the Constitution guarantees a criminal defendant the

6

right to self-representation, as long as he voluntarily and intelligently waives his right to counsel.

7

*Faretta v. California*, 422 U.S. 806, 807 (1975). The Supreme Court has recognized that "[t]here

8

can be some tension in these two principles." *Marshall v. Rodgers*, 569 U.S. 58, 62, 133 S. Ct.

9

1446, 1449, 185 L. Ed. 2d 540 (2013) (internal citations and quotation marks omitted). However,

10

"the Supreme Court has never explicitly addressed a criminal defendant's ability to re-assert his

11

right to counsel once he has validly waived it." *Id.*

12

      In *Marshall*, the habeas petitioner claimed the trial court violated his Sixth Amendment

13

right to counsel in denying his request for appointment of counsel for purposes of a new trial

14

motion after he had validly waived his right to counsel prior to trial. *Marshall*, 569 U.S. at 62. In

15

addressing that claim, the United States Supreme Court described the state's (California's) legal

16

framework which granted trial courts discretion to consider post-waiver requests based upon the

17

totality of the circumstances. *Marshall*, 569 U.S. at 62–63. The Supreme Court held that, "in light

18

of the tension between the Sixth Amendment's guarantee of the right to counsel at all critical stages

19

of the criminal process ... and its concurrent promise of a constitutional right to proceed without

20

counsel when a criminal defendant voluntarily and intelligently elects to do so," California's

21

approach under state law of granting trial courts discretion to consider post-waiver requests based

22

upon the totality of the circumstances, was neither contrary to nor an unreasonable application of

23

clearly established federal law. *Marshall*, 569 U.S. at 63 (citations, internal quotation marks and

REPORT AND RECOMMENDATION - 42

brackets omitted); *see also Forte v. Lizarraga*, No. 219CV04166MWFAFM, 2020 WL 2495812, at *10 (C.D. Cal. Jan. 22, 2020), *report and recommendation adopted*, No. 219CV04166MWFAFM, 2020 WL 4455090 (C.D. Cal. July 31, 2020).

Here, petitioner does not challenge the validity of the waiver of his right to counsel. The record supports the state appellate court's description of the facts surrounding petitioner's waiver and then attempt to reassert his right to counsel. As the state appellate court found, the trial court questioned petitioner at length regarding his request to proceed pro se and explained to petitioner that it would constitute a waiver of his right to counsel going forward, that he had no right to reappointment of counsel, and that the best the court would do was appoint his trial attorney as standby counsel. Dkt. 10, Ex. 13, at 571-584. The trial court told petitioner that he could not "go back and forth on representing yourself", that "[g]iving up your right to have counsel appointed for you and exercising your right to represent yourself is a big decision and it's pretty much a one-time decision. And it's not a way to find yourself a new attorney[.]" *Id.*, at 572. The trial court also advised petitioner that if his motion for a new trial was denied, he would be representing himself at sentencing, and if his motion was successful, he would be representing himself at a new trial. *Id.*, at 577-579. Petitioner indicated he understood and that he still wished to proceed pro se and the motion was granted with the trial court appointing petitioner's trial attorney as standby counsel. *Id.*, at 583. Petitioner subsequently filed a motion for a new trial pro se asserting that his trial counsel, Mr. Flora, had been ineffective at trial, at which point Mr. Flora moved to be relieved as standby counsel based on the conflict of interest presented by the motion. Dkt. 10, Ex. 14, at 590. Petitioner then requested that new standby counsel or new counsel be appointed. *Id.*, at 591. The Court declined to substitute standby counsel or appoint new counsel to argue the new trial motion because the motion was petitioner's as a pro se litigant. *Id.*, at 590-594.

1      The Court finds that the Supreme Court's holding in *Marshall*, discussed above, is

2   dispositive of petitioner's claim that he was denied his Sixth Amendment right to counsel for

3   purposes of arguing his motion for a new trial and for sentencing. *Marshall*, 569 U.S. at 62.

4   Petitioner identifies no clearly established federal law holding that state trial courts lack discretion

5   to deny a defendant's request for reappointment of counsel after a valid waiver of the right to

6   counsel. Although the standard under Washington state law for evaluating post-waiver requests

7   for counsel appears to be slightly different than the California standard discussed in *Marshall*,

8   petitioner fails to identify any clearly established Supreme Court precedent requiring a different

9   approach or indicating the trial court did not have discretion to deny petitioner's motion under

10   these circumstances.

11      The Court concludes that petitioner has failed to show the state court's rejection of his

12   claim was contrary to or an unreasonable application of clearly established federal law or an

13   unreasonable determination of the facts. *See Wright v. Van Patten*, 552 U.S. 120 (2008) (when

14   Supreme Court cases "give no clear answer to the question presented, let alone one in [petitioner]'s

15   favor," a state court cannot have unreasonably applied clearly established federal law).

16   Accordingly, Ground 7 should be denied.

17          6.      *Ground 8: Joinder*

18      Petitioner claims his right to a fair trial was violated when the trial court joined all five

19   counts for trial. Dkt. 4-2. Respondent contends that there is no clearly established federal law,

20   within the meaning of 28 U.S.C. § 2254(d), governing a state court's discretionary decision

21   whether to sever charges for trial and, as such, petitioner's claim fails to state a federal

22   constitutional ground for relief. Dkt. 9, at 50.

23

1          With respect to the joinder of counts the Supreme Court has stated: "Improper joinder does

2     not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional

3     violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right

4     to a fair trial." *United States v. Lane,* 474 U.S. 438, 446 n. 8 (1986). However, in *Collins v. Runnels*,

5     603 F.3d 1127, 1132 (9th Cir. 2010), the Ninth Circuit determined that the comment in *Lane* was

6     dicta, noting that the case concerned joinder under the Federal Rules of Criminal Procedure and

7     that no federal constitutional issue was before the Supreme Court. As such, pursuant to the Ninth

8     Circuit's holding, there is no clearly established federal law within the meaning of AEDPA setting

9     forth constitutional standards for severance or improper joinder of counts. *Collins*, 603 F.3d at

10    1132–33 (rejecting argument that *Lane* sets forth clearly established federal law on this issue);

11    *Grajeda v. Scribner,* 541 Fed. Appx. 776, 778 (9th Cir. 2013) ("The Supreme Court has not held

12    that a state or federal trial court's denial of a motion to sever can, in itself, violate the

13    Constitution."); *Hollie v. Hedgpeth,* 456 Fed. Appx. 685, 685 (9th Cir. 2011) ("The Supreme Court

14    has never held that a trial court's failure to provide separate trials on different charges implicates

15    a defendant's right to due process."); *see also Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir.

16    2012) ("[T]here is no clearly established federal law requiring severance of criminal trials in state

17    court even when the defendants assert mutually antagonistic defenses."); *see also Horcasitas v.*

18    *Montgomery*, No. CV 15-1813-JLS (KES), 2015 WL 10709902, at *10 (C.D. Cal. Dec. 23, 2015),

19    *report and recommendation adopted*, No. CV1501813JLSKES, 2016 WL 1588474 (C.D. Cal.

20    Apr. 19, 2016).

21          There is a line of Ninth Circuit opinions holding that the misjoinder of counts may be

22    grounds for habeas relief if joinder renders the defendant's trial "fundamentally unfair." *See Davis*

23    *v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004); *Bean v. Calderon,* 163 F.3d 1073, 1086 (9th Cir.

1998); *Featherstone v. Estelle,* 948 F.2d 1497, 1503 (9th Cir. 1991). But that line of authority appears to rely on the pre-AEDPA standard of review or on cases applying that standard. *See Mejia v. Foulk,* CV 13–9465–AB (RNB), 2015 WL 391688, at *10 n. 7 (C.D. Cal., Jan. 28, 2015) (noting that these Ninth Circuit cases applied the pre-AEDPA standard of review, or relied on cases applying the pre–AEDPA standard of review, based either on dictum in *Lane* or on Ninth Circuit precedent unsupported by Supreme Court authority).

Pursuant to Washington Superior Court Criminal Rule (CrR) 4.3(a), multiple offenses may be charged in a single charging document when the offenses are the same or of a similar character or are based on the same conduct or on a series of acts connected together or constituting a single scheme or plan. Petitioner's trial counsel moved during pre-trial motion proceedings to sever Count 5 from the other counts. Dkt. 10, Ex. 2, at 16-21. The judge presiding over the pre-trial motion proceedings, Honorable William Bowman, applying the four-part test set out in *State v. Russell*[12], 125 Wn.2d 24, 63, 882 P.2d 747 (1994)), denied the motion without prejudice.

Specifically, the court noted that in this case,

> [t]here is DNA evidence in Counts 1 and 2; and there is not in Counts 3, 4 and 5; but, in general they're all sort of first-person accounts. Actually Counts 3 and 4 have two witnesses instead of one witness to admit much of what went on there so it's, I guess, arguably a little stronger than the other count, as well, but less strong than Counts 1 and 2. But none of them are of such a disparity that it causes the Court a concern that what the State is doing is boot-strapping counts here.

Dkt. 10, Ex. 2, at 26-27. The court also found that "given the close time frame in which all of these [incidents] happened, the comment in Count 5 about having assaulted three people earlier and the

---

[12] Under *Russell*, "[i]n determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *Russell*, 125 Wash. 2d at 63.

REPORT AND RECOMMENDATION - 46

nature of what occurred, I think it's likely that they will be cross-admissible, most likely, on a res gestae sort of argument." Dkt. 10, Ex. 2, at 27.

Defense counsel renewed the motion to sever count 5 to the trial judge, Honorable Catherine Shaffer, prior to jury selection but conceded his position was "less tenable now based on things that developed even after the motion or criminal motions." Dkt. 10, Ex. 3, at 68. The court declined to re-address the issue again at that point in the following exchange with defense counsel:

> Court: "well, let me say this about severance […] I want to know what's new that would cause me to feel like I have more information or different information than whatever judge ruled on this before."
>
> Defense Counsel: "Well, actually the more information is unfavorable to my argument."
>
> Court: "Then let's wait until you have information that's favorable to your argument and then I'll take it up. But right now I don't want to second-guess another judge."

Dkt. 10, Ex. 3, at 68. Defense counsel did not subsequently renew the motion at any later point in the trial. The trial court also instructed the jury at the conclusion of trial that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on another count." Dkt. 10, Ex. 27, at 65.

The Washington appellate courts rejected petitioner's claim challenging the trial court's denial of his motion to sever. The Court of Appeals explained its conclusion as follows:

> Offenses may be severed for trial if the trial court determines that severance will promote a fair trial. State v. Bythrow, 114 Wn.2d 713, 117, 790 P.2d 154 (1990) (quoting CrR 4.4(b)). A defendant seeking severance has the burden of demonstrating that "a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718. In assessing whether to sever the counts to avoid prejudice to a defendant, the trial court considers: "(1) the strength of the State's evidence on each count; (2) the clarity of the defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." State v. Sutherby, 165 Wn.2d 870, 884-85, 204 P.3d 916 (2009) (quoting State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)).

REPORT AND RECOMMENDATION - 47

1

2

> Prior to trial, Stahl requested that count V, the indecent liberties charge involving N.W., be severed from the other counts.[13] 2RP 16. The trial court denied the motion. Stahl subsequently renewed the motion, but admitted that his position was even "less tenable" than before.

3

> Here, as the trial court determined, the evidence on counts I through IV was somewhat stronger than the evidence on count V, but not overwhelmingly so.[14] And Stahl does not challenge the trial court's determination that the evidence on count V would have been cross-admissible as to the other counts as res gestae because they happened on the same day at the same location.[15]

4

5

Dkt. 10, Ex. 29, at 9-10.

6

7

The Supreme Court likewise rejected petitioner's claim stating that:

8

> [H]e does not show he was actually and substantially prejudiced by constitutional error in relation to the charges being tried together, nor does he demonstrate the existence of nonconstitutional error that resulted in a complete miscarriage of justice.

9

Dkt. 10, Ex. 31, at 4.

10

11        Because the Supreme Court has not clearly established that improper joinder of counts or

12    the denial or a motion to sever by the state court violates the federal constitution, petitioner cannot

13    establish that the state court acted contrary to or unreasonably applied clearly established Supreme

14    Court precedent in rejecting petitioner's challenge to the joinder of charges. *See Wright*, 552 U.S.

15    120.

16        Furthermore, even if the Court were to assume that petitioner could obtain habeas relief

17    under AEDPA upon a showing that the joinder of charges rendered his trial fundamentally unfair,

18

---

19    [13] [Footnote 4 by Court of Appeals] Stahl appears to contends [sic] that he was entitled to three separate trials – on count I and II together, on count III and IV together, and on count V. But Stahl only sought severance of count V below. A defendant must move to sever offenses at the latest, at the close of evidence. CrR 4.4(a)(1). Failure to do so constitutes waiver. CrR 4.4(a)(1).

20    [14] [Footnote 5 by Court of Appeals] As the State notes, there was also substantial overlap in the testimony as to all the charges. Several officers testified about Stahl's appearance and demeanor at the time of his arrest, as well as their contact with multiple victims.

21

22    [15] [Footnote 6 by Court of Appeals] Citing State v. Bluford, 188 Wn.2d 298, 305, 393 P.3d 1219 (2017), Stahl argues that the focus of his claim is whether the offenses should have been joined, not whether severance should have been granted. "If multiple charges were originally brought against a defendant in separate charging documents, the court "may" join offenses on a party's motion." Bluford, 188 Wn2d at 305-06. Here, the State did not charge Stahl in separate charging documents. Rather, the State amended the information to add count V involving N.W. Consequently joinder was never at issue.

23

REPORT AND RECOMMENDATION - 48

the Court cannot conclude the state court erred. In applying the pre-AEDPA standard of review or relying on cases applying that standard, the Ninth Circuit has stated that the requisite level of prejudice required to render a trial "fundamentally unfair" would be reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 384 F.3d at 638 (quoting *Sandoval*, 241 F.3d at 772). In evaluating prejudice, the focus is particularly on the cross-admissibility of evidence and the dangers of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another. *Davis*, 384 F.3d at 638.

Nothing in the record suggests petitioner's trial was rendered fundamentally unfair by the joinder of charges. The record reflects that while the evidence in Counts 1-4 was somewhat stronger than that in Count 5, it was not overwhelmingly so. As the trial court noted, all of the charges relied on first-person accounts. While there was some additional evidence supporting Counts 1-4, (DNA for Counts 1 and 2 and additional eyewitness testimony for Counts 3-4), there was still substantial evidence, independent of the evidence supporting the other charges, in the form of direct eyewitness testimony from the victim (N.W.), supporting Count 5. Specifically, N.W. testified that the petitioner had become angry with her while they were in the tent and that when she tried to crawl away from petitioner he grabbed her between her legs by her vagina and that it felt like petitioner was trying to insert his fingers into her vagina. Dkt. 10, Ex. 8, at 239-242. The fact that there was significant independent evidence supporting each of the charges, in the form of eyewitness testimony (or eyewitness statements introduced), also indicates that the charges against petitioner were not improperly bolstered by a "spillover" effect from the other charges.

1    Furthermore, as the trial court determined, it appears much of the evidence would have

2    been cross-admissible as to the other counts as res gestae because the incidents all happened on

3    the same day at the same location.[16] Additionally, as the trial judge noted in the context of denying

4    petitioner's motion to dismiss Count 5 [the indecent liberties charge related to N.W] after the close

5    of evidence in the case:

6        [T]here's some cross-admissibility here with regard to the event we just heard about on the
         witness stand [relating to Counts 1 and 2 of indecent liberties and rape in the second degree
7        with respect to J.S.]. It appears that if that event happened as described, and of course I
         accept that as having happened exactly the way the State's witness describes it, that
8        indicates, first of all, Mr. Stahl is heterosexual, that is to say attracted to women and not to
         his own gender or some other orientation, and secondly, it appears very clear that if that
9        act occurred, it was for purposes of his gratification in that he allegedly ejaculated all over
         the face of this other woman. Secondly, besides the fact that Mr. Stahl was behaving which
10       indicated he was interested in sexual gratification allegedly very close in time to the events
         involving [N.W.] on count V, we have the fact that [N.W.] was not only touched or
11       assaulted in the area of her private parts but that there was actually an effort to insert a
         finger into her vagina. It's a very sexual act committed by a heterosexual man against a
12       woman and very hard to see as anything other than for the purpose of sexual gratification.
         [...] here it seems to be an effort to aggressively touch in a sexual manner a woman who
13       frankly is reasonably attractive, just like Mr. Stahl's alleged other female victim [J.S.] on
         this occasion. [...] I think there's enough here for a reasonable jury reasonably looking at
14       all the evidence together about what Mr. Stahl's behavior was over the whole period to
         conclude that in fact he also did this for sexual gratification.

15   Dkt. 10, Ex. 12, at 451-453. Given this type of cross-admissibility, and the fact that there was, at

16   a minimum, separate independent eyewitness testimony (or statements introduced) from the

17   victims with respect to each of the incidents charged, including Count 5, (thereby minimizing the

18

19   [16] Under Washington Evidence Rule 404(b):
         Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a
20       person in order to show action in conformity therewith.  It may, however, be admissible
         for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
21       knowledge, identity, or absence of mistake or accident.
     Washington courts also recognize a *res gestae* or "same transaction" exception to ER 404(b). *State v.*
22   *Langston*, 197 Wash. App. 1054 (2017). The *res gestae* exception makes "evidence of other crimes
     admissible to complete the story of the crime on trial by proving its immediate context of happenings near
23   in time and place." *Lane*, 125 Wn.2d at 831 (internal quotations omitted). Evidence is properly admitted
     under the *res gestae* exception if it is necessary to depict a complete picture for the jury. *State v. Filitaula*,
     184 Wn. App. 819, 825, 339 P.3d 221 (2014) (citing *Lane*, 125 Wn.2d at 832)).

1   concern regarding improper "spillover") petitioner fails to demonstrate joinder of the charges

2   rendered his trial fundamentally unfair or that the state courts erred in rejecting his claim.[17]

3          In sum, the Supreme Court has not clearly established the right petitioner asserts, and even

4   if petitioner could obtain habeas relief by showing the joinder of charges rendered his trial

5   fundamentally unfair, he fails to make such a showing or demonstrate that the state court's

6   rejection of his claim was contrary to or an unreasonable application of clearly established federal

7   law, or an unreasonable determination of the facts. Accordingly, Ground 8 should be denied.

8          7.      *Ground 9: Juror Misconduct*

9          Petitioner claims the trial court erred in failing to dismiss juror 18 for misconduct violating

10  petitioner's right to an impartial jury. Dkt. 4-2. Specifically, petitioner claims:

11          The record establishes that there was a serious question as to whether the juror was
12          prejudiced by seeing Stahl in restraints be escorted down the hallway by jail officers in
            handcuffs. This exposed Juror 18 to partiality, prejudice, bias in regard to Stahl's innocence
            by seeing him in restraints and custody.
13          The record also shows that Juror 18 was "disobeying the court's orders" in
            defiance, by mocking the court's instructions to not use the bathroom on the 8th floor. This
14          order was to prevent contact between the jury and defendant, in order to circumvent them
            seeing him in restraints/custody, while in recess.

15  Dkt. 4-2.

16         Trial by an impartial jury is fundamental to the fair administration of criminal justice.

17  *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). An

18  impartial jury is one that is composed of "jurors who will conscientiously apply the law and find

19  the facts." *Lockhart v. McCree*, 470 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S.

20  412, 423 (1985)). The Sixth Amendment right to an impartial jury and the due process right to a

21

22  _____
    [17] The Court also notes that the trial in this case was only four days long, the state, for the most part,
    presented evidence as to each of the counts separately, and there was separate eyewitnesses testimony (or
23  statements introduced) from the victims of each incident. The jury was instructed that they must decide
    each count separately and that their verdict on one count should not control their verdict on any other count.
    *See Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (jurors are presumed to follow the instructions of
    the court).

REPORT AND RECOMMENDATION - 51

1    fundamentally fair trial guarantee to criminal defendants a trial in which jurors set aside

2    preconceptions, disregard extrajudicial influences, and decide guilt or innocence "based on the

3    evidence presented in court." *Irvin*, 366 U.S. at 723; *see also Sheppard v. Maxwell*, 384 U.S. 333,

4    362 (1966); *Smith v. Phillips*, 455 U.S. 209 (1982) ("Due process means a jury capable and willing

5    to decide the case solely on the evidence before it.").

6        Jurors are objectionable if they have formed such deep and strong impressions that they

7    will not listen to testimony with an open mind. *Irvin*, 366 U.S. at 722, n. 3. A defendant is denied

8    the right to an impartial jury if even one juror is biased or prejudiced. *Fields v. Woodford*, 309

9    F.3d 1095, 1103 (9th Cir. 2002), *amended,* 315 F.3d 1062 (9th Cir. 2002); *Dyer v. Calderon*, 151

10   F.3d 970, 973 (9th Cir. 1998) (en banc). The burden is on the defendant to establish that a juror

11   lacks impartiality. *See Wainwright*, 469 U.S. at 423. In evaluating a claim of juror impartiality,

12   deference must be paid to a state trial judge's determination of bias. *See id.* at 426. A finding on

13   whether a juror is biased "is based upon determinations of demeanor and credibility that are

14   peculiarly within a trial judge's province." *Id.* at 428. Such determinations regarding juror

15   impartiality constitute "factual issues" which are subject to the presumption of correctness set forth

16   in § 2254(e)(1). *See id.* at 429.

17       Clearly established federal law, as determined by the Supreme Court, does not require state

18   or federal courts to hold a hearing every time a claim of juror bias is raised by the parties. *Tracey*

19   *v. Palmateer*, 341 F.3d 1037, 1045 (9th Cir. 2003); *see also Sims v. Rowland*, 414 F.3d 1148, 1153

20   (9th Cir. 2005) (Supreme Court cases do not require that a trial court conduct a hearing sua sponte

21   whenever presented with allegations of juror bias). In *Remmer v United States*, 347 U.S. 227

22   (1954), and *Smith v. Phillips*, 455 U.S. 209 (1982), the Supreme Court addressed the propriety of

23   holding a hearing to investigate evidence of juror bias. But "neither case mandates a hearing

whenever evidence of juror bias is raised; nor does either case address the situation […] where no party has requested a hearing to investigate evidence of juror bias." *Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005). *Remmer* addressed the propriety of a hearing in a specific context where there was evidence of jury tampering and the trial judge and prosecutor addressed the issue *ex parte* without the defendant or his counsel. *See Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) ("*Remmer's* command that hearings are warranted in *every* case is unique to the tampering context, where the potential effect on the jury is severe.") (emphasis in original); *Sims*, 414 F.3d at 1154 ("a similarly plausible reading posits that the *Remmer* Court merely condemned the *ex parte* manner in which the trial judge and the prosecutor handled the situation without the knowledge of the defendant or his counsel."). *Smith* states that a hearing "may" be the proper course, and that a hearing "is sufficient" to satisfy due process but left as an open question whether a hearing is always required and what else might be "sufficient" to alleviate any due process concerns. *Tracey*, 341 F.3d at 1044 (citing *Smith*, 455 U.S. at 217, 218).

The Ninth Circuit has stated that in determining whether a hearing is required where an issue of juror bias is raised, the court should consider the content of allegations, seriousness of the alleged misconduct or bias, and credibility of the source. *Sims*, 414 F.3d at 1153; *Tracey*, 341 F.3d at 1044-45 (concluding that state trial court's decision not to question juror further to obtain names of other jurors and to take additional testimony from them was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent).

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence presented at trial. *See Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). Evidence not presented at trial is deemed "extrinsic." *See Marino v. Vasquez,* 812 F.2d 499, 504 (9th Cir. 1987). Jury exposure to extrinsic evidence deprives a defendant of the

rights to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment. *See Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir.1995). That the extrinsic evidence comes from a juror rather than a court official or other party does not diminish the scope of a defendant's rights under the Sixth Amendment. *See Jeffries*,114 F.3d at 1490. However, not every incident of juror misconduct requires a new trial. *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.1974). Rather, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id.* A petitioner is entitled to habeas relief only if it can be established that the exposure to extrinsic evidence had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Sassounian v. Roe,* 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting *Brecht*, 507 U.S. at 623). In other words, the error must result in "actual prejudice." *See Brecht*, 507 U.S. at 637; *see also Estrada v. Scribner*, 512 F.3d 1227, 1235 (9th Cir. 2008) (noting that *Brecht* provides the standard of review for harmless error in cases involving unconstitutional juror misconduct).

Here, the record reflects that prior to the conclusion of jury selection, the court brought some preliminary matters to the parties' attention including the following:

> Number 18, Mr. Kinimaka, apparently keeps stopping in the restrooms on this floor. He told Ms. Maderra [the bailiff] he did that as a joke to see if he can sneak that in and out. I think I'm going to talk to him outside the presence of the other panel to explain to me why it is disobeying the Court's orders is funny, and then we'll move forward with everybody else.

Dkt. 10, Ex. 7, at 147. The record indicates that the Court subsequently questioned then prospective juror 18 during voir dire regarding his use of the restroom, but this part of the voir dire was not transcribed.[18] Dkt. 10, at 152. There is nothing in the record to indicate that defense counsel

---

[18] It appears that none of the jury voir dire was transcribed. *See* Dkt. 10, Ex. 5, at 137; Ex. 6, at 142; Ex. 7, at 152-153. Respondent asserts that neither party requested that the jury voir dire be transcribed for appeal purposes. Dkt. 9, at 55, n. 25. The Court also notes that petitioner does not argue that the parties were not present during the court's questioning of prospective juror 18.

REPORT AND RECOMMENDATION - 54

1    requested any further action from the trail court with regards to the issue and prospective juror 18

2    was subsequently selected for the jury (as juror 8) and participated in deliberations. Dkt. 10, Ex.

3    12, at 561.

4          The state appellate courts rejected petitioner's juror misconduct claim. The Court of

5    Appeals explained its conclusion as follows:

6          Stahl next argues that the trial court erred in failing to dismiss Juror 18 for
       misconduct. RCW 2.36.110 and CrR 6.5 impose on the trial court a continuous obligation
       to investigate allegations of juror unfitness and to excuse jurors who are found to be unfit.
7      RCW 2.36.110 sets forth the circumstances under which a trial court must dismiss a juror:

8                It shall be the duty of a judge to excuse from further jury service
              any juror, who in the opinion of the judge, has manifested
9             unfitness as a juror by reason of bias, prejudice, indifference,
              inattention or any physical or mental defect or by reason of
10            conduct or practices incompatible with proper and efficient jury
              service.

11         For dismissal to be proper, the record must establish that a juror engaged in
       "misconduct." State v. Jorden, 103 Wn. App. 221, 229, 11 P.3d 866 (2000). In resolving
12     an allegation of juror misconduct, the trial court may act as both an observer and a decision-
       maker, and its factual determinations are given deference on appeal. Elmore, 155 Wn.2d
       at 768-69; Jorden, 103 Wn. App. at 229.
13         On December 2, 2015, during jury selection, the court noted that juror 18 had used
       the restroom on the same floor as the courtroom. The court had previously advised the
14     jurors not to do this, in order to prevent them from inadvertently seeing Stahl transported
       from the courtroom in restraints. Stahl did not request juror 18's removal from the venire.
15     Stahl asserts that "there was a serious question as to whether the juror was prejudiced by
       seeing Stahl in restraints being escorted by the jail officers." But Stahl provides no evidence
16     that Juror 18 saw him in restraints. See In re Pers. Restraint of Rice, 118 Wn.2d 876, 885-
       86, 828 P.2d 1086 (1992) (a personal restraint petition must set out the facts underlying the
17     claim and the evidence available to support the factual assertions); see also RAP
       16.7(a)(2)(i) (a personal restraint petition must include as grounds for the requested relief
18     "[a] statement of … the facts upon which the claim of unlawful restraint of petitioner is
       based and the evidence available to support the factual allegations."). Stahl fails to establish
       that Juror 18's behavior constituted misconduct or that he was prejudiced thereby.
19
20   Dkt. 10, Ex. 29, at 1066-1067. The Supreme Court, in denying review, also rejected the juror

     misconduct claim:

21
22         Mr. Stahl contends that the trial court erred in not dismissing a prospective juror
       who disobeyed the court's directive by using a bathroom situated on the same floor as the
23     courtroom. The court had advised the jurors not to use that bathroom to prevent them from
       inadvertently seeing Mr. Stahl being taken from the courtroom in constraints. Mr. Stahl did
       not ask the court to remove the juror, and he presents no evidence that the juror saw him in

restraints. Again, he demonstrates no prejudice from the juror's one time use of the
bathroom the court had placed off limits.

Dkt. 10, Ex. 31, at 1118-1119.

Petitioner claims "the record establishes that there was a serious question as to whether the
juror was prejudiced by seeing Stahl in restraints be escorted down the hallway by jail officers in
handcuffs." Dkt. 4-2, at 10-12. Despite petitioner's conclusory assertion, there is simply no
evidence in the record that the juror in fact saw petitioner in restraints in the process of using the
restroom and that he was thereby actually biased or prejudiced in any way. The state appellate
court's finding on this point is a reasonable determination of the facts. The record shows the trial
judge investigated the issue regarding the juror's use of the restroom contrary to her direction by
questioning the juror during voir dire and petitioner points to no evidence indicating the juror in
fact saw the petitioner in restraints or to otherwise indicate the juror was biased by the trip to the
restroom. There is no indication defense counsel requested an additional hearing or fact-finding
on the issue and, in fact, the record shows the juror in question was ultimately seated on the jury.

Petitioner points to no clearly established federal law as determined by the United States
Supreme Court requiring a trial judge to sua sponte dismiss a juror for failing to follow a directive
not to use a specific restroom when there is no evidence presented that the juror was biased or
prejudiced thereby in any way. Nor does petitioner cite to any clearly established federal law
requiring the trial court to conduct a further inquiry or hearing under these circumstances. Because
there is no evidence the juror actually saw petitioner in restraints and was thereby biased, petitioner
also fails to demonstrate the trial court's failure to dismiss this juror had a "substantial and injurious
effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 637.

In sum, petitioner has not demonstrated that the state courts' rejection of his juror misconduct claim was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. Accordingly, Ground 9 should be denied.

C.    Evidentiary Hearing

Petitioner asks the Court to hold an evidentiary hearing. Because his claims can be resolved by reference to the state court record, an evidentiary hearing is not necessary. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that a certificate of appealability should be denied.

## V.    CONCLUSION

The Court recommends petitioner's habeas petition be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED. A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 57

1        Objections to this Report and Recommendation, if any, should be filed with the Clerk and

2   served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

3   and Recommendation is signed. Failure to file objections within the specified time may affect your

4   right to appeal. Objections should be noted for consideration on the District Judge's motions

5   calendar for the third Friday after they are filed. Responses to objections may be filed within

6   **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

7   ready for consideration by the District Judge on **March 5, 2021**.

8        Dated this <u>8th</u> day of February, 2021.

9

10

                 Mary Alice Theiler

11                   United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 58